### DEMAREST and Wife *against* WYNKOOP and others.

Twenty years possession by a mortgagee, without any account or acknowledgment of a subsisting mortgage, is a bar to all equity of redemption, unless the mortgagor can bring himself within the *proviso* in the statute of limitations, the construction of which is the same in equity as at law.

The disability that entitles the party to the benefit of the *proviso*, must be existing at the time the right first accrues; so that, if during the ten years allowed to an *infant*, a subsequent disability, as *coverture*, arises, the time continues to run notwithstanding such second disability. Successive or cumulative disabilities are not within the policy or settled and sound construction of the statute.

A *feme covert* may mortgage her separate property for her husband's debts; so she may also execute a valid *power to sell* the property, in case of default, pursuant to the statute. A sale of mortgaged premises at public auction by a surviving executor of the mortgagee, according to the statute, is a complete bar to the equity of redemption. And where the sale was regular and fair, but the deed of the executor produced, was dated *nineteen* years after the time of sale, it was presumed that a deed was duly given at the time, and lost, and that the one produced was executed for greater caution.

But, as between the parties, where there is no intervening right, such a deed will take effect, by relation, from the time of the conclusion of the bargain and sale, especially in a court of equity.

In a mortgage by husband and wife, of the wife's separate estate, the wife may, if she choose, reserve the equity of redemption to the husband alone, who may sell and dispose of it.

Where a plaintiff had colour of claim, though barred, in the opinion of the court, by lapse of time, his bill was dismissed without costs.

BILL filed *October* 11th, 1815, for the redemption of a mortgage. *Philip Minthorn*, in *March*, 1756, died seised of a tract of land in the out-ward of the city of *New-York*, leaving a widow and nine children. By his will, he devised all his estate to his widow, for life, and after her de-

cease, to his children in fee. *Hannah,* one of the daugh-
ters, married *Wiert Banta,* and on the 29th of *October,*
1765, *Johanna,* the widow of the testator, conveyed to the
children all her interest in the estate. By indenture of
partition, executed the 30th of *October,* 1765, between the
children and their husbands, reciting the will of their father
and the release of their mother, and that they were seised
as tenants in common, and had divided the land into lots,
and that *Wiert Banta* and *Hannah* his *wife,* had drawn three
lots, marked No. 2. the other eight parties, in considera-
tion of five shillings, &c. bargained, sold, released and con-
firmed unto the said *Wiert Banta,* and his *wife,* the said three
lots, to have and to hold the same, to the said *Wiert Banta,*
and *Hannah* his *wife, their heirs and assigns, forever, in
severalty.* The like deed was executed by each of the
parties to the others, with covenants and warranty.

*Wiert Banta* and his wife, by a deed of mortgage dated
the 29th of *March,* 1771, reciting the seisin of *P. M.* his
death, and the will, release and partition, mortgaged
the said three lots, No. 2. to *Gabriel Ludlow,* to secure
the payment of three hundred pounds, with interest, in
one year from the date thereof. The mortgage contained
the usual power of sale, in case of default, and the over-
plus arising from the sale, after paying the debt, &c. was
to be paid to *Wiert Banta,* his heirs, executors, administra-
tors, or assigns. No part of the principal or interest was
ever paid by the mortgagors; and *G. L.* the mortgagee,
died the 20th of *December,* 1773, having made his will the
5th of *February,* 1771, and appointed four executors. Af-
ter his decease, *Daniel Ludlow,* one of his children, as de-
visee, heir, or legal representative, became legally pos-
sessed of the mortgage.

*Wiert Banta,* and *Hannah* his wife, had three children,
*Hannah, Frances,* and *Catharine. Hannah* married one *Al-
lington,* and lived on one of the lots so mortgaged, during
the revolutionary war, and afterwards left this country,
with her husband, and died without issue. *Frances* mar-

ried *Nicholas Nagel,* now living in *New-Jersey.* *Catharine* died in 1782, leaving the plaintiff, *Hannah,* her only child and heir at law, then about one year old, and who, afterwards, at the age of 19 years, married the plaintiff, *John Demarest,* and claimed a moiety of the premises, subject to the equity of redemption of the said mortgage.

*Hannah,* the wife of *W. B.* died in 1786, and the defendants in their answer, alleged, that being seised under the partition, *as joint tenants by entireties, W. Banta,* as survivor, became seised of the equity of redemption in fee.

On the 7th of *May,* 1788, *W. Banta, Nicholas Nagel,* and *Frances,* his wife, who was described as the only child of the said *Wiert Banta,* for the consideration of 125 pounds, conveyed the mortgaged premises to *Daniel Ludlow,* in fee. The deed contained full covenants of title, and against all incumbrances except the mortgage. *Daniel Ludlow* made an endorsement, under his hand and seal, on the deed, covenanting that no action should be brought against *W. B.* his heirs, &c., for the money secured by the said mortgage, *it being only kept on foot to protect the title.* The defendants, in their answer, charged that the 125 pounds was then the full value of the equity of redemption.

On the 28th of *January,* 1791, *Robert Cromeline* and *Samuel Verplank,* the two surviving executors of *G. Ludlow,* by virtue of the power contained in the mortgage, advertised the premises for sale, at public auction, on the 1st of *August,* 1791, pursuant to the statute. *R. C.* in the mean time died, and the premises were sold by *S. V.* the surviving executor, at auction, according to the notice, to *Daniel Ludlow,* as the highest bidder, for 320 pounds, who thereby became entitled to a conveyance, but whether a deed was then executed, and afterwards lost or mislaid, did not appear; but the defendants, in their answer, set forth a deed from *S. V.* the surviving executor, &c., to

*Daniel Ludlow,* dated the 2d of *April,* 1810, which they insisted was a perfect bar to the equity of redemption, if any existed.

*Daniel Ludlow* was in the actual possession of the premises, from the time he purchased the equity of redemption of *Banta,* until the 17th of *May,* 1790, when by a deed, reciting that by sundry mesne conveyances he had become seised of the premises, in fee simple, he conveyed the same, in fee, to *Petrus Stuyvesant,* with full covenants as to title.

*Stuyvesant* continued in quiet possession of the premises, until the 15th of *April,* 1803, when by three several deeds he conveyed the premises in three several parcels, to *Jacob Boerum* and *A. Wynkoop,* and the other defendants, in fee. *J. B.* on the 20th *February,* 1805, released his moiety to the defendant, *Wynkoop.*

The plaintiffs claimed the equity of redemption to a moiety of the premises mortgaged, the whole of which they averred to be worth sixty thousand dollars, exclusive of improvements. That the defendants have been in possession of the rents and profits for several years, which were more than sufficient to extinguish the principal and interest of the mortgage, but refused to render an account, &c. The bill prayed for an account, and for general relief, &c.

The defendants, in their answer, denied all knowledge or notice of any right, title, or claim, of the plaintiffs, to the property; and stated that they were informed, and verily believed, that the equity of redemption has been released to *D. L.* who had become entitled to the mortgage, and that the equity of redemption had been foreclosed. That, considering themselves absolute owners of the property, they have kept no accounts of the rents and profits, which, however, they allege would fall far short of the amount due on the mortgage, if the same were redeemable; and they insisted on the length of pos-

session, connected with the other circumstances, as full bar to all right or equity of redemption by the plaintiffs.

The cause came on to be heard in *October* last, and was argued by *D. B. Ogden* and *S. Jones*, jun. for the plaintiffs, and by *Harison*, *T. A. Emmet* and *Slosson*, for the defendants.

The counsel for the *plaintiffs*, insisted on the following points :

1. That by the partition deed between the children of *Philip Minthorne* deceased, *Hannah*, the wife of *W. Banta*, became seised in *severalty*, of the estate which she before held in common with the other children. (3 *Johns. Rep.* 168. 1 *Atk.* 165.)

2. That the fee being in *Hannah*, the wife of *W. Banta*, her heirs have a right to redeem the mortgage, unless the equity of redemption has been foreclosed ; but no act has been done, which can defeat their right to redeem.

3. That the length of time, in this case, cannot operate as a bar against the plaintiffs; the plaintiff, *Hannah*, having been constantly under legal disabilities. (*Smith* v. *Burtis*, 9 *Johns. Rep.* 174. 181. 2 *Vern.* 377. *Prec. in Ch.* 116.)

*For the defendants*, the following points were insisted on :

1. That the deed of the 30th of *October*, 1765, between the parties of the first part, and *Wiert Banta* and his wife, operated as a *bargain and sale* to *W. B.* and his wife, of the premises in question, by which they took an estate in fee, by entireties; which estate, on the death of *Hannah*, survived to *W. B.* and his heirs. (4 *Cruise Dig.* tit. 32. ch. 8. s. 19. *Co. Litt.* 200 b. 189 a. 190 b. 5 *Com. Dig.* 166. *Co. Litt.* 169 a. 18 *Vin.* 305. 2 *Johns. Rep.* 288. 4 *Johns. Rep.* 61. 3 *Vesey*, 690.)

2. That the *pecuniary* consideration expressed in the deed, was sufficient to raise a *use* to the bargainee, which being once raised, the declaration of that use must govern; and the husband and wife had an undoubted right to limit

the uses of her estate as they might agree; and, besides, the estate, previous to partition, belonged to them jointly, by purchase from the widow of *P. M.* so far as respected her interest, the advance for such purchase being, no doubt, made by the husband. That the considerations stated excluded the idea of a *trust* on the part of the husband for the wife; but even if there was a trust, it was not charged in the bill, nor a specific execution of it sought; and, moreover, it could not be enforced against an innocent purchaser relying on the legal title. (3 *Johns. Rep.* 432. 2 *Vent.* 35. *Harg. Co. Litt.* 123. *n.* 8. *Saunders on Uses,* 313. 315. 4 *Cruise,* 194. tit. 32. ch. 12. s. 31. 2 *Atk.* 74. *Bro.* tit. *Coverture,* pl. 477. 2 *Saund.* 180. 1 *Mod.* 290. 1 *Sid.* 466. 2 *Co.* 57. 2 *Comyn's Dig. Baron and Feme,* (B. 2.) 2 *Cruise,* 508. tit. 18. ch. 1. s. 35. 5 *Term Rep.* 652.)

3. That the *mortgage* by *W. B.* and his wife, to *Daniel Ludlow,* reserved to the husband the entire equity of redemption. As after her death, the husband had full power to redeem, and was entitled to the surplus money, his release to *D. L.* gave a perfect title, and extinguished the equity of redemption.

4. Admitting that the equity of redemption had not been conveyed to *D. L.* or barred by any of the conveyances mentioned, the sale by the executors of *G. L.* the mortgagee, under the power, was a complete bar and foreclosure, according to the statute. After a lapse of 28 years, coupled with the uninterrupted possession, the court will intend, that a *deed* was executed at the time, and presume a *notice* to have been regularly given pursuant to the act. (*Bergen* v. *Bennet,* 1 *Caines' Cases in Error,* 1.)

5. The plaintiffs are barred by the statute of limitations. Mrs. *Demarest* came of age as early as 1802, when, at least, the statute began to run against her husband, who was bound to pursue his remedy, within ten years after her disability as an infant ceased; and that this was equally

a bar to the wife, who is only protected during the con-
tinuance of her first disability.

6. That the length of time connected with the adverse
possession, and the circumstance of the defendants being
*bona fide* purchasers, for a valuable consideration, without
notice, is a complete bar to the relief sought by the bill.
(2 *Vesey*, jun. 454. 2 *Freeman*, 24. 2 *Vern.* 158. *Finch*,
102. 1 *Johns. Ch. Rep.* 219. 300. 1 *Ch. Rep.* 286.
2 *Vent.* 340. 2 *Vern.* 418. 3 *Atk.* 235. 3 *P. Wms.*
287. note. 1 *Johns. Cas.* 213. 6 *East*, 80.)

7. That the defendants are not liable to account; and
as the bill does not seek to redeem, but merely claims to
have the premises discharged from the mortgage, on the
ground that the debt is extinguished by the perception of
the rents and profits, there is no ground on which the
court can give relief. (7 *Vesey* 541. 4 *Bro. C. C.* 521.)

The cause stood over for consideration until this day,
when the following opinion was delivered by

*December 3.*

THE CHANCELLOR. This is a suit to redeem a mort-
gage, executed as early as 1771. Persons claiming an
estate, in fee, under the mortgagee, have been in posses-
sion of the mortgaged premises since *May*, 1788, or 27
years before the filing of the bill.

Several objections have been taken to the suit.

1. The length of possession is set up, and relied upon,
in the answer, as a bar to the claim.

It is a well-settled rule, that 20 years possession, by the
mortgagee, without account or acknowledgment of any sub-
sisting mortgage, is a bar to a redemption, unless the mort-
gagor can bring himself within the proviso in the statute of
limitations. This proviso saves the rights of infants, *feme
coverts*, &c. if they bring their action within 10 years af-
ter their disability removed. The analogy between the right
to redeem in this court, and the right of entry at law,
is presumed complete and entire throughout, so that the

*Twenty years
possession by a
mortgagee, is a
bar to the equi-
ty of redemp-
tion.*

*Right to re-
deem in equi-
ty and right of
entry at law,
analogous.*

1817.

DEMAREST
v.
WYNKOOP.

The construction of the statute of limitations is the same in equity as at law.

mortgagor who comes to redeem, after the 20 years, must show himself within one of the exceptions that would save his entry or ejectment at law; and he must, likewise, show that he had filed his bill within 10 years after his disability ceased. The cases which I have looked into, and to which I now refer, are uniform in support of this just and necessary rule; and the construction of the statute is the same here as at law. The same limitations are adopted, with the allowance of the same time for disabilities. (*Jenner* v. *Tracey*, note to 3 *P. Wms.* 287. *Belch* v. *Harvey*, ib., and in app. No. 12. to *Sugden's Law of Vendors*, 3d edit. Lord *Kenyon*, in *Bonny* v. *Ridgard*, cited in 17 *Vesey*, 99. Lord *Camden*, in 3 *Bro.* 639. note. *Anon.-*3 *Atk.* 313. *Aggar* v. *Pickerell*, 3 *Atk.* 225. Lord *Rosslyn*, in *Lytton* v. *Lytton*, 4 *Bro.* 458. *Hodle* v. *Haley*, 1 *Vesey & B.* 536. *Reeks* v. *Postlethwaite*, *Cooper's Eq. Rep.* 161. *Bairon* v. *Martin*, id. 189. *Moor* v. *Cable*, 1 *Johns. Ch. Rep.* 385.)

In this case, *Daniel Ludlow*, who claimed the mortgage, took a deed, in fee, on the 7th of *May*, 1788, from *Banta*, one of the mortgagors, and from *Nagel* and his wife, who was one of the heirs of *Banta's* wife, the other mortgagor. From that time, we are to consider the representative of the mortgagee in possession, claiming to hold the land, not in trust, or mortgage, but adversely, and in his own right. At that time, the plaintiff, *Hannah Demarest*, was an infant of the age of seven years, and entitled to all the equity of redemption which she now sets up. She was of age in 1802, and her bill was not filed until 1815, so that not only the 20 years had elapsed since the mortgagee's possession, but the 10 years since her disability of infancy ceased. She had then lost her equity of redemption by lapse of time. It is true she has not had 20 full years, free of disability, to redeem, but she has had 10 years free of disability, and more than 20 years in the whole have elapsed, and this is all that the statute allows. For this

purpose I may refer to the observations which I made in the supreme court, in the case of *Smith* v. *Burtis*, (9 *Johns. Rep.* 181.) and which appear to me to be founded on a sound construction of the statute of limitations. The party has, in every event, 20 years to make his entry; and if under disability during any part of that time, he has 10 years, and no more, after the disability ceases. It may so happen that the 20 years, and more, will elapse during the disability, and then 10 years will be afterwards allowed cumulatively; or the disability may cease, so far within the period of the 20 years, as to allow of only 20 years in the whole, though part of that period be covered by the disability. This construction does not give to persons labouring under disability, the same number of years after they become of competent ability, as it allows to other persons who were under no such disability. Such is the policy, and the very language of the statue, for it did not mean, as in the case of the limitation of personal actions, that the party should, at all events, have the full period of time after the disability had ceased, because the words of the act are explicit, that the extension of the time of making the entry beyond the twenty years, is in no case to exceed ten years after the disability is removed. This is also the amount of the doctrine contained in the case of *Doe, ex dem George and Frances his wife*, v. *Jesson*, (6 *East*, 80.) for there the whole period, from the time that the right descended or accrued, to the time of bringing the suit, was but 27 years, and above eight of the first years of that time had been consumed by an acknowledged disability; yet the right of entry was held to be tolled by lapse of time.

In the case of *Belch* v. *Harvey*, one of the cases above referred to, the cause was ended by consent of parties, after argument, but Lord *Talbot*, who had studied the case thoroughly, then observed, that if he had made a decree, his opinion would have been, that after the disa-

1817.

DEMAREST
v.
WYNKOOP.

DEMAREST
v.
WYNKOOP.

bility of infancy was removed, the time fixed for prosecu-
ting, in the proviso, which is ten years, should also have
been observed. The proviso, as he said, contained an ex-
ception of several cases out of the purview of the statute,
and if the parties at law would avail themselves of the
proviso, they must take it under such restrictions as the
legislature hath annexed to it, and that is, to sue within
ten years after the impediment ceases. Lord *Talbot* also
adds, " why should not the same rule govern in equity ? I
think, there is great reason that it should. The persons
who are the subject of the proviso are not disabled from
suing, they are only excused from the necessity of doing
it during the continuance of a legal impediment; there-
fore, when that difficulty is removed, *the time allowed for
their further proceeding should be shortened.* If they would
excuse a neglect under the first part of the proviso, should
they not do it upon the terms on which such excuse is
given ?"

But another difficulty may be started in this case; during
the infancy of the plaintiff, a second disability ensued, by
means of her marriage; and it has been made a question,
whether a succession of disabilities, thus closing on each
other, can be permitted as an excuse within the statute.

*The disability
which entitles
a party to the
benefit of the
proviso in the
statute of limi-
tation must ex-
ist when the
right of action
first accrues.*

Upon one construction she would have the whole period
of her coverture, and ten years afterwards.

I am clearly of opinion, that the party can only avail
himself of the disabilities *existing when* the right of action
first accrued.

If several disabilities exist together, at the time the right
of action accrues, the statute does not begin to run until
the party has survived them all. (1 *Plowd.* 375.) But
the case of *Doe* v. *Jesson*, already referred to, is an author-
ity to show that cumulative disabilities cannot be allowed.
There the disseisin happened when the right owner was
an infant, and he died in infancy, leaving his infant sister
his heir; and the court of K. B. held, that she was bound,

notwithstanding her infancy, to bring her ejectment within ten years *after the death of her brother*, as more than 20 years had, in the whole, elapsed since the death of the person last seised.

The policy of the statute of limitations, is to quiet possessions, and extinguish dormant claims. There is much wisdom in the general provision, and though courts of equity are not within the letter of those statutes, they have generally followed the rule, and held equitable rights concluded by the same bar, and subject to the same exceptions. If there are instances to the contrary, they are special cases, as those of direct trusts, or as that of *Bond* v. *Hopkins*, (1 *Sch.* and *Lef.* 413.) where lapse of time was attempted to be set up manifestly against conscience, or where there is fraud in the transaction. (1 *Johns. Ch. Rep.* 594.) If disability could be added to disability, claims might be protracted to an indefinite extent of time, and to the great injury and oppression of the country. According to an expression of Lord *Eldon*, "a right might travel through minorities for two centuries." It would be impolitic, as well as contrary to established rule, to depart from the plain meaning, and literal expression of the proviso in the statute of limitations. We cannot well misapprehend the meaning of the legislature. The party bringing himself within the proviso, must be, " *at the time* such right, or title, *first descended, or accrued*, within the age of 21 years, *feme covert*, insane, or imprisoned," and he must bring his action within ten years " *after such disability* removed."

*Successive*, or cumulative disabilities are not within the policy, or sound construction of the statute.

The case of *Eager* v. *The Commonwealth*, (4 *Tyng's Mass. Rep.* 182.) is another, and a very weighty decision on this point. The plaintiff was an infant, and before the termination of her infancy, the disability of coverture occurred, but the supreme court of *Massachusetts* held, that the latter disability not existing when the right first accrued, was not within the proviso, and that the party was

1817.

DEMAREST
v.
WYNKOOP.

bound to have brought her writ within the given time after the first disability had ceased. The supreme court of *Connecticut* did, indeed, in the case of *Eaton* v. *Sanford*, (2 *Day's Rep.* 523.) recognize a right which had floated through successive disabilities, for near sixty years. But no reasons of the court are assigned in the case, and the decision itself was afterwards disregarded, and the question treated as an open one by the supreme court of the same state, under a new organization of the court, in the case of *Bush* v. *Bradley*, (4 *Day's Rep.* 298.) In the last case, there was no decision upon the point, but I may refer to the opinion of one of the judges, (Mr. Justice *Smith*,) vindicating the construction given in 6 *East*, by a plain and unanswerable argument.

The construction which excludes from the benefit of the proviso, in all our statutes of limitations, successive or cumulative disabilities, is within the reason and spirit of the decision in the celebrated case of *Stowel* v. *Zouch*, (*Plowd.* 353.) The principle of that case decidedly governs this question, and for the purpose of showing this, it may not be amiss to give a short review of it.

*Stowel* being seized in fee of certain lands, was disseized by *Zouch*, who levied a fine with proclamations. Three years afterwards, *Stowel* died, without entry or claim to avoid the fine, leaving his heir at law, an infant of the age of six years. The infant made no claim during his minority, but entered within one year after he came of age. It was determined, by a great majority of the judges, in the exchequer chamber, after several solemn arguments, (for the case was argued twice in the C. B. and twice in the exchequer chamber, before all the judges of England,) that the demandant was barred, by reason of not making his claim before the expiration of the five years, which had begun to run in the time of his ancestor, and expired in the time of his infancy. No point was, perhaps, ever more fully, ably, and profoundly argued. The discussion

was aided by illustrations drawn from reason, convenience, policy, precedents, and the principles of the common law; in short, it was adorned by all the learning and eloquence of *Westminster Hall.* The argument and decision established the doctrine, that the exceptions in the statute of fines of 4 *Hen.* VIII. in favour of infants and others, extended only to such infants, &c. to whom the right accrued, or who actually possessed a right *when the fine was levied,* and that no such right had at that time descended, or accrued to the demandant, for his ancestor was then alive; that the circumstance of the demandant being an infant when his ancestor died, was of no avail, because the exception in the statute gave the excuse of infancy to those only to whom a right *first* accrued, or who had a right *at the time* of the fine levied, and, therefore, the plea of infancy did not apply to the case ; that *no new right* accrued after the fine was levied, as the demandant's title was as heir to his ancestor, *in whom the right attached* when the fine was levied ; that public tranquillity was more to be favoured than the nonage of an infant, and that if infancy, closing on infancy, was to be allowed in succession, "the matter might possibly be delayed many hundred years ;" that the statute intended to limit a certain time for the first right, and which was not to be exceeded by exposition or equity, though particular persons might suffer by it ; " that the public repose was more to be regarded than the private convenience of any particular person, whether he be an infant, or of unsound mind, or in other degree ;" that if a disability terminates, and a party within one month thereafter, becomes disabled by a new disability, as imprisonment, unsound mind, &c. and so continues all the five years, or, if at the end of the first month of the five years, he dies, leaving an infant heir, the statute continues to run, notwitstanding the subsequent disability.

The great principle of this case, that the disability within

**1817.**

**DEMAREST**
**v.**
**WYNKOOP.**

the proviso, must exist *when* the right of entry accrues, and that a *subsequent* disability is of no account, was recognized and confirmed in *Doe* v. *Jones*, (4 *Term. Rep.* 300.) Lord Kenyon said, that one uniform construction of all the statutes of limitation had prevailed, down to that moment, and that " it would be mischievous to refine, and to make nice distinctions between the cases of voluntary and involuntary disabilities; (as one of the counsel, without any sufficient warrant, had attempted) but in both cases, when the disability is once removed the time begins to run." It runs, said another of the judges, notwithstanding any subsequent disability, either voluntary or involuntary. The case of *Doe* v. *Shane*, *M.* 28. *G.* 3. (cited in the note to 4 *Term Rep.* 306.) is, also, a very strong case on this point. The plaintiff against whom a fine was set up in bar, was of sound mind when the fine was levied, but he became insane about two years afterwards, and the question was, whether the time continued to run against him while he was in that state. *Erskine*, for the plaintiff, found the current of authorities so strong against him, that he would not pretend to argue the question, and the K. B. said the point was too plain to be disputed, and the rule for a nonsuit was made absolute.

The *doctrine of* any inherent equity creating an exception as to any disability, where the statute of limitations creates none, has been long, and, I believe, uniformly exploded. General words in the statute must receive a general construction, and if there be no express exception, the court can create none. It was agreed, without contradiction, in *Stowel* v. *Zouch*, (*Plowd.* 369. *b.* 371 *b.*) that the general provision in the statute of fines would have barred infants, *feme coverts*, and the other persons named in the proviso, equally with persons under no disability, if they had not been named in the exception or saving clause. So in *Dupleix* v. *De Roven*, (2 *Vern.* 540.) the Lord Keeper thought it very reasonable, that the statute of limitations should

not run when the debtor was beyond sea, but there was no saving in the case, he could not resist the plea of the statute. The same doctrine is declared, in explicit and impressive terms, by Sir *Wm. Grant*, in *Beckford* v. *Wade*, (17 *Vesey*, 87.) and who refers to the opinion of Sir *Eardly Wilmot*, in Lord *Buckinghamshire* v. *Drury*, (*Wilmot's Opinions*, 177. s. 194.) and to the decisions in the common law courts, (*Hall* v. *Wybourn*, 2 *Salk*. 420. *Aubry* v. *Fortescue*, 10 *Mod*. 206.) that though the courts of justice be shut by civil war, so that no original could be sued out, yet the statute of limitations continued to run.

The opinion of Lord *Redesdale*, in *Hovenden* v. *Annesley*, (2 *Sch. & Lef*. 630. 640.) and of Lord *Manners*, in *Medlicott* v. *O'Donnell*, (1 *Ball* and *Beatty*, 156.) are remarkably elaborate in tracing the authorities, and in enforcing the duty of a court of equity to render entire *obedience* to all the provisions of the statutes of limitations.

Before I leave this point, I ought to notice the case of *Lamar* v. *Jones*, (3 *Harris* and *M'Henry's Rep*. 328.) in which the late Chancellor *Hanson*, of *Maryland*, adopted the *English* rule, and held that the equity of redemption was barred after 20 years' possession by the mortgagee, without interest paid, or an account, and when the lapse of time was relied on in the answer, and ten years had expired after the disability had ceased. This would have been a case perfectly in point, but it was reversed on appeal on the ground, that the court of chancery in *England* had not adopted that part of the statute of limitations which allows only ten years to infants, after they come of age, to bring their actions, and the Court of Appeals considered what Lord *Talbot* had said in *Belch* v. *Harvey*, as only a *dictum*. But, I apprehend, that the opinion of Lord *Talbot*, formed as it was, after argument, and ready for delivery, has all the weight due to his very enlightened judgment. Lord *Camden*, in *Smith* v. *Clay*, (3 *Bro*. 639. note.) cites that very case and opinion, to show that the statute

**1817.**

**DEMAREST**
**v.**
**WYNKOOP.**

of limitations, in all its provisions, had been adopted, and become the "*settled*" law in equity. The case was also cited by the counsel in *Lytton* v. *Lytton*, (4 *Bro.* C. C. 458.) and Lord *Rosslyn* admits, that a similar proviso in the statute of limitations of 10 and 11 *W.* III. limiting infants to five years after they come of age, to bring error, was to be adopted with the provisions of that statute, as applicable to the analogous case of bills of review. This is a clear judicial sanction to the doctrine of Lord *Talbot*, and, therefore, as well upon authority as upon the reason and policy of the rule, I conclude, that the court of appeals in *Maryland* was, in this instance, mistaken; and with respect to the learned Chancellor's opinion, notwithstanding the reversal, I trust I may, without offence, be permitted to say, *Scævolæ assentior*.

I conclude, accordingly, that the lapse of time is here a bar to the right of redemption. The plaintiff has not excused her laches, and the length of adverse possession being insisted on by the answer, the defendant is entitled to the benefit of it equally as if it had been pleaded. (1 *Atk.* 494.)

2. As this first point is decisive against the bill, I need not touch the other points raised on the part of the defendants; but it may, perhaps, be more satisfactory to the parties that I should notice, at least, one objection going to the merits of the case.

*A feme covert may mortgage her separate property for her husband's debts, and a sale by a mortgagee, or his executors, under a power contained in the mortgage pursuant to the statute, is a valid bar to the equity of redemption.*

The sale by the executors of the mortgagee appears to be also a valid bar to to the redemption. There is no doubt that a wife may sell or mortgage her separate property for her husband's debts. Her deed, under her separate examination before a competent officer, is as valid, with us, as if she passed her estate by fine, at the common law. Nor do I perceive any objection to her competency to create a power in the mortgagee to sell, in default of payment. If she can convey upon condition, she may prescribe the terms; and it is fit and convenient that the mortgagor

should be able to confer the power. It is one that is recognized and regulated by statute, and is supposed, and has always been deemed, to be incident to the power to mortgage.

It was held in *Wotton* v. *Hele* (2 *Saund.* 177.) that if baron and feme grant land belonging to the wife, by fine, with covenant of warranty, and the grantee be evicted by paramount title, covenant lies, after the husband's death, against the wife, upon the warranty. This shows that the wife may deal with her land, by fine, as if she was a *feme sole ;* and it is a much stronger case to hold her bound by the covenant of warranty than by the power to sell.

The power, in this case, was duly executed by the executors, without the heirs of the mortgagee. The power in question was given to the mortgagee, his heirs, *executors,* &c. and a mortgage interest, before foreclosure, is considered in this court as a chattel interest, and personal assets, and belongs to the executor. Though the technical fee may descend to the heir, he takes it in *trust* for the personal representatives. (*Thornbrough* v. *Baker,* 1 *Ch. Cas.* 283. *Tabor* v. *Grover,* 2 *Vern.* 367. *Fisk* v. *Fisk,* *Prec. in Chan.* 11. See also 2 *Vern.* 193. 1 *Atk.* 605.)

*A mortgage interest, before foreclosure, is a chattel, and personal assets, belonging to the executor.*

The sale was in 1791, and one of the children and heirs of the mortgagee had, previously, in 1788, taken a release of the equity of redemption from *Banta* and *Nagel* and wife. If the equity of redemption resided in either of them, at that time, there is no pretence for the present suit; if it did not, but was in the plaintiffs, then this purchase was no extinguishment of the mortgage debt. The purchase by *Daniel Ludlow* was of the equity of redemption.

The testimony is sufficient, that six months' notice of the sale was given in one of the public papers; and if the proof was lame on this fact, yet the doctrine in *Bergen* v. *Bennet,* (1 *Caine's Cases in Error,* 1.) would cure it.

**1817.**

DEMAREST
v.
WYNKOOP.

It was there held, that after a lapse of sixteen years, a mortgagee is not to be heard to question the regularity of the notice of sale; and that every apparent defect was to be supplied by intendment.

*A deed executed to the purchaser, nineteen years after a sale made by virtue of a power in a mortgage, is good by relation, there being no intervening right. And the court will, after such a lapse of time, presume that a deed was given, at the time of sale, when it ought to have been done, and had been lost.*

The sale is proved by the auctioneer, but no deed from the executor is produced, except one, executed for greater caution by the executor, nineteen years after the sale, and which presumes a deed to have been executed at the time, and lost.

As between the parties themselves, and where there is no intervening right repugnant to the deed, I do not perceive the objection to the retrospective operation and effect of the deed produced. A deed will, in many cases, have relation back to the time of the conclusion of the bargain and sale. (*Jackson* v. *Bull*, 1 *Johns. Cas.* 81.) This will be more especially admitted in this court, which often considers what ought to be done, as done, and will compel the specific execution of deeds.

The defendants are *bona fide* purchasers, for a valuable consideration, under the title of *Daniel Ludlow*, the purchaser at such sale. They appear not to be chargeable with notice of any outstanding equity in the plaintiffs; and I am of opinion that, independent of the bar arising from the lapse of time, the plaintiffs are concluded by the execution of the power contained in the mortgage. There is no pretence or allegation of fraud in this case, and though the plaintiff was an infant when the sale was made, she was, notwithstanding, barred of her equity; and if she was not, yet ten years had elapsed after her disability removed. The statute has no saving clause for persons labouring under disability, but it is peremptory that *no sale*

*Where the statute makes no exception, this court will make none, in favour of infants.*

*under such power shall be defeated to the prejudice of any bona fide purchaser, in favour of any person claiming the equity of redemption.* Where the statute makes no exception, the court, as I have already shown, can make

none on the ground of any inherent equity applicable to infants.

Though *Ludlow*, the purchaser at the sale, might be chargeable with notice of facts (if any then existed) fatal to his title, yet a *bona fide* purchaser under him is not affected by his notice. This is the settled rule. (*Jackson* v. *Given*, 8 *Johns. Rep.* 141.)

3. There was a third objection, to which I think weight might be attached. The husband was to redeem the mortgage by paying the bond, and in case of sale, the surplus was to be rendered *to him*. If it be the true construction of the mortgage deed, that the equity of redemption was intended by the wife to be reserved to the husband alone, it seems that he may take it, and, of course, dispose of it, as he did in this case; and the reservation will be good, if fairly procured. (*Penne* v. *Peacock*, *Cas. temp. Talbot*, 42. *Brend* v. *Brend*, 1 *Vern.* 213.) But as I am not quite satisfied in such a construction, and of the evidence of such an intention, I have chosen to place this case entirely on the other points, and I shall consequently dismiss the bill. There were other objections raised to the suit, on which I give no opinion.

There has been some doubt in my mind, how I ought to dispose of the costs ; but considering the special circumstances of the case, and that the plaintiffs were in some degree recommended to apply to this court, in the opinion which was given against them on the ejectment at law, (8 *Johns. Rep.* 168.) I have concluded, that the bill ought to be dismissed, without costs. It is not usual to give costs, where the unfortunate claimant has colour of claim, and is barred by lapse of time. Costs were accordingly refused to the defendants, in *Hovenden* v. *Annesley*, and in *Lamar* v. *Jones*, to which I have already referred. Independent of the lapse of time, here were colourable grounds for discussion.

Bill dismissed, without costs.

*margin notes:*

1817.

DEMAREST,
v.
WYNKOOP.

Though a purchaser at a public sale be chargeable with notice, yet a *bona fide* purchaser under him is not affected by his notice.

It seems, that in a mortgage by husband and wife, of the wife's separate estate, the equity of redemption may be reserved to the husband alone, and that he may dispose of it.

Costs refused against a plaintiff having colour of claim, but barred by lapse of time.