WILLIAM HERTLE AND MARY
ANN HIS WIFE
vs.                           MARCH TERM, 1850.
McDONALD, EX'R. AND AUGUS-
TUS SCHWARTZE.

[PRACTICE—STATUTE OF FRAUDS—TRUST—LIMITATIONS—DISABILITY—LAPSE
OF TIME.]

PAROL proof cannot be offered, to change or contradict the terms of a deed or contract, in writing, upon the ground of fraud, surprise or mistake, unless appropriate allegations are contained in the bill.

It is indispensable that a trust, founded on the agreement of the parties, should be manifested and proved by some writing, signed by the party creating it. The trust need not *be created*, but must *be proved*, by writing.

Mortgagees in possession, and holding without an acknowledgment or recognition of the title of the mortgagor, for twenty years or more, would not be liable to be redeemed, though there is no statutory bar to the right of redemption.

For the sake of uniformity between the proceedings in courts of law and equity, twenty years after forfeiture and possession taken by the mortgagee, no interest having been paid in the meantime, has been fixed upon as the period, beyond which the right of redemption does not extend.

As courts of equity have adopted the period of twenty years as a bar to the right of redemption, in imitation of the first clause of the statute, so they have also adopted the ten years, fixed in the proviso, for prosecuting after the disability is removed.

Successive or cumulative disabilities are not allowed to interfere with the running of the statute, and where the only disability at the time when the right of action accrued, was infancy, it was held, that the ten years must be computed from the termination of infancy, though the party may have married before her infancy terminated.

In this case, the right of action accrued in 1813, and the bill was not filed until 1845, thirty-two years after the right accrued, and fourteen after disability removed ; it was HELD, that the statute of limitation was an insuperable bar to the relief sought by the bill.

Lapse of time is a defence peculiar to courts of equity, who discountenance stale and antiquated demands, for the peace of society, by refusing to interfere where there has been gross laches in prosecuting rights, or long acquiescence in the assertion of adverse rights.

[This case originated in the equity side of Baltimore County Court, and was removed to the Court of Chancery under the act of assembly. The facts upon which the relief prayed is refused are fully set forth in the Chancellor's opinion.]

THE CHANCELLOR:

The bill in this case alleges that William Gibbons, the father of the female complainant, in the month of November, 1809, purchased of one Robert Corry, a lot of ground in the city of Baltimore, for which he gave his two promissory notes, each for the sum of $1000, dated on the 25th of that month and year, and payable in six and twelve months, respectively, from that date. That thereupon he took from Corry a bond of conveyance for the property, a copy of which is exhibited with and made part of the bill, that Schwartze and William McDonald, the testator of one of the defendants, Samuel McDonald, became the sureties of said Gibbons, by indorsing his notes for the purchase money, and that Gibbons for the purpose of indemnifying them as his sureties, assigned to them, or to Schwartze, for their joint security, the said bond of conveyance, as appears by a copy of the assignment indorsed thereon.

That Gibbons died before the maturity of the notes, leaving as his only children and heirs at law, the female complainant and two infant male children, long since dead, without issue and intestate, so that the said female complainant is now his only surviving heir at law. The bill then charges, "that at the time of the assignment of the bond of conveyance to the said Schwartze and McDonald, it was agreed by and between them and the said Gibbons, that if the said Gibbons should make default in the payment of the said promissory notes, that his said sureties should take and hold possession of said property, and out of the rents and profits thereof, should pay themselves for all outlay and expense, which they might incur for their said suretyship, and should hold and occupy the said property for the benefit of said Gibbons and his heirs, after such payment and indemnification." "That by reason of the death or inability of Gibbons to pay the notes, Schwartze and McDonald were compelled to pay them, in consideration whereof, and of the assignment aforesaid, Corry, on the 15th day of March, 1811, conveyed the property to them as tenants in common, and that they, the said Schwartze and McDonald, have, from the rents and profits, been fully indemnified; so that the purposes of the

assignment to them having been accomplished, they are now to be regarded, and did in fact become, trustees for the benefit of the heirs of said Gibbons—that, nevertheless, on or about the 13th of January, 1812, they entered into a bond of conveyance to a certain William West, to convey to him said property for the sum of $4000, payable, one-third in cash, and the residue in six and twelve months, and did accordingly receive said purchase money in full when due, and afterwards, in January, 1821, conveyed the property to said West."

That by reason of these circumstances, the female complainant became entitled to receive from Schwartze and McDonald said sum of money, which, notwithstanding they have refused to pay, and then the bill prays, that the parties may be compelled to account and pay, and for general relief.

The answer of Schwartze admits that the defendant, McDonald and himself, did lend to Gibbons the use of their names, to enable him to purchase the property, and that the bond of conveyance was assigned to them by way of security, to indemnify them against loss. And he insists that during the life of Gibbons, and after his death, he paid large sums of money for debts contracted by him for the purchase of the property, and for other purposes.

He denies that the bond of conveyance from Corry was assigned to him and his co-defendant, for the purpose of paying the debts of said Gibbons from the rents and profits; and he avers, that Gibbons occupied the property until his death, and that his widow and children resided thereon, from the time of his death until the time of the sale thereof. He admits the sale to West as charged, but insists that he advanced and paid more money for Gibbons than he received from West, and he pleads and relies upon the statute of limitations as a defence to the bill.

The answer of the executor of McDonald, admits the execution of the deed of the 15th of March, 1811, from Corry to Schwartze and his testator, and that they on the 13th of January, 1812, executed a bond of conveyance to West, for the property, and conveyed the same to him in January, 1821; but of

the payment of the purchase money, the defendant knows nothing except that derived from the deed to West. The defendant says, he has no personal knowledge of the various matters alleged in the bill, showing the interest of the complainant in the property, nor has he been able, after a diligent search among the books and papers of his testator, to find any such information, and therefore puts the complainants to the proof of their bill in this respect.

The answer then pleads and relies upon the statute of frauds and perjuries, and upon lapse of time, and the act of limitations as constituting a full and complete defence to the claim set up in the bill.

It may be observed, that no evidence has been offered which proves, or even attempts to prove, the agreement charged in the bill, to wit: that Schwartze and McDonald should keep possession of the property, in case of default by Gibbons, until they were reimbursed from the rents and profits for the money, which, as his sureties, they might be compelled to pay. Nor does the bill allege that the deed from Corry, to Schwartze and McDonald, was not intended to be absolute, or that it was made so by fraud, accident or mistake, and, therefore, did not fulfil, but defeated the design of the parties ; and, consequently, parol proof upon these points is inadmissible; for it is too clearly established to be disputed, that you cannot offer such proof to change or contradict the terms of a deed or contract, in writing, upon the ground of fraud, surprise or mistake, unless appropriate allegations are contained in the bill. *Wesley* vs. *Thomas*, 6 *Har. & Johns.*, 25. In that case the Court of Appeals say, "that although relief can be had in equity against a deed or contract, in writing, founded in fraud or mistake—still, it is essential, that the fraud or mistake should be alleged in the bill, as the ground and object of parol proof." And the same principle, has been uniformly affirmed by the court wherever the question came before it.

As, therefore, the bill, in this case, does not allege that the deed from Corry to the defendants is different, or conveys a different title from that which was intended and agreed upon;

and that the true design of the parties has been frustrated by fraud or mistake; and as the averments of the bill and the admissibility of the evidence of fraud or mistake—if there be any such evidence—are excepted to, because such averments are not made, I do not see how it is possible the complainant could have a decree, even if the other defences should be insufficient.

The case made by the bill, is, that the defendants, having made the contract alleged, and being reimbursed from the rents and profits, they are, with respect to the purchase money received by them from West, to be regarded as trustees for the heirs of Gibbons. There is no pretence, however, that they were, in fact, reimbursed in the way alleged, and the claim now urged in the argument, is, not that they are liable for the whole sum received from West, but for the difference between that sum and the money paid by them, as sureties of Gibbons.

The trust here set up, is not a resulting trust, implied by law from the presumed intention of the parties, and the justice of the case, as when an estate is purchased in the name of one person, and the consideration money is paid at the time by another, when a trust results in favor of the latter, which being excepted from the operation of the statute of frauds, may be proved by parol. There is, in this case, not only no proof of the payment of the consideration money *at the time*, by Gibbons, which is essential to the creation of such a trust, 4 *Kent Com.* 305, but he never, in fact, paid the money at any time, the repayment to the defendant, according to the proof, being derived from the sale by them to West.

If, therefore, there was a trust at all, it was not a resulting one implied by law, but a trust founded upon the agreement of the parties, and if so, then it is indispensable that it should be manifested and proved by some writing, signed by the party creating it. The trust need not be created, but must be proved by writing, and there being no such evidence in this case, this court could not pass a decree founded upon the idea of its existence.

There is, however, it seems to me, another defence which is perfectly insuperable.

The cause of action in this case, if ever there was one, arose upon the payment of the money by West to the defendants, Schwartze and McDonald, in 1813, and the bill was not filed until the 30th August, 1845, so that a period of more than thirty-two years intervened between the right to sue and the institution of the suit.

Now here is an interval which would be more than sufficient to preclude the plaintiffs from any title to the aid of the court, even though the defendants had claimed simply as mortgagees, and by no higher title. For it cannot be doubted, that mortgagees in possession, and holding without an acknowledgment or recognition of the title of the mortgagor, for twenty years or more, would not be liable to be redeemed, though there is no statutory bar to the right of redemption.

In this case, the purchaser, West, was put in possession as early as 1813, upwards of thirty-two years before this bill was filed, and there is no evidence whatever, of any acknowledgment or recognition of the title of Gibbons, or of any one claiming under him, during that long space of time. Upon every principle, therefore, it would seem the claim is barred, unless it can be shown that when the right to sue accrued, the plaintiffs were under some disability, which excused them, and continued so until within the time allowed by law to sue after the disability is removed. Now in this case, Mrs. Hertle, who survived her brothers, was a minor in 1813, when the cause of action accrued, and continued so until 1831, when she became of age. When she married does not appear, but she unquestionably married after the claim accrued, and therefore cannot avail herself of her marriage to prolong the period in which she should assert her rights, subsequent or cumulative disabilities being unavailable for any such purpose. *Dugan* vs. *Gettings*, 3 *Gill*, 138. Though mortgages are held not to be within the words of the statute of limitations, and no positive time has been fixed upon, which shall be an absolute bar to redemption, yet courts of equity have thought it reasonable to establish, by analogy to the statute, a period at which, *prima facie*, the right of redemption shall be presumed to be deserted by the mortgagor, unless

some circumstances can be brought forward, such as infancy, coverture, &c. to account for the neglect, and for the sake of uniformity between the proceedings in courts of law and equity, twenty years after forfeiture and possession taken by the mortgagee, no interest having been paid in the mean time, has been fixed upon as the period beyond which, the right of redemption does not extend. 1 *Powell on Mortgages*, 360. *Demarest* vs. *Wynkoop*, 3 *Johns. Ch. Rep*. 129. In this case, as we have seen, the property, which, upon the theory of the complainants' solicitor was held in mortgage by Schwartze and McDonald, was sold by them in 1812, was fully paid for by the purchaser in 1813, when the possession was given up to him by the widow of the mortgagor, who, down to that period, had with her children been in the possession and enjoyment of it. From the time the possession was so surrendered to the purchaser, there is no pretence that there has been any recognition or acknowledgment of any kind, of the title of the mortgagor, and consequently it follows, that the right of entry at law on the part of the mortgagor and his heirs was barred, and in equity the bar of the statute is equally complete, whether the latter court act in analogy to the statute or in obedience to it. *Dugan* vs. *Gettings*, 3 *Gill*, 161. The only possible answer which can be given to this view of the case is, that the female complainant was, at the time the property was so sold and possession taken by the purchaser, a minor.

This is true, but then her minority ceased in the year 1831, and this bill was not filed until August, 1845, so that the disability had been removed for fourteen years before she instituted her suit, and consequently she does not bring herself within the proviso of the statute of limitations, which allows ten years for prosecuting a suit, after the disability is removed, and as the courts of equity have adopted the period of twenty years as a bar to the right of redemption, in imitation of the first clause of the statute, so they have also adopted the ten years fixed in the proviso for prosecuting after the disability is removed. 1 *Powell on Mortgages*, 364. *Beckford* vs. *Wade*, 17 *Vez.*, 99. *Demarest* vs. *Wynkoop*, 3 *Johns. C. R.*, 129. The only disability

which existed when this property was sold and possession de-
livered to the purchaser, was that of infancy, and though her
marriage may have taken place before the infancy terminated,
(of which however there is no evidence,) still as successive or
cumulative disabilities are not allowed to interfere with the
running of the statute, the ten years given to an infant must
be computed from the termination of her infancy, as has been
decided by the highest authority in the state, and by Chancellor
Kent in the case last referred to.

I am, therefore, of opinion that the statute of limitations which
is relied on, in the answers of both of the defendants, is a bar
to the relief sought by the bill.

With regard to the defendant McDonald, there is another
defence relied upon, which is peculiar to courts of equity, and
which, in my judgment, would effectually protect him from this
claim, and that is founded upon the lapse of time, and the stale-
ness of the demand. I say the defendant, McDonald, because
he only relies upon it in his answer, though I do not mean to
be understood as deciding that the defence founded upon
lapse of time may not avail a party, who does not set it up in
his answer.

The complainants here do not seek to recover the property
itself, or to unsettle the title of the purchaser. Their object is
to get at the purchase money, upon the principle that with res-
pect to the surplus remaining in the hands of the defendant, after
repaying their advances, they must be regarded as trustees for
them. There is certainly nothing in this case which can give
it the character of a direct trust. If it be a trust at all, it is
one by construction only, and the cases are full to the effect
that constructive trusts will not be permitted to be made out at
any distance of time, after the facts and circumstances happened,
out of which they arise, as was said by Sir William Grant, in
17 *Vez.*, 97, "there was no ground for a doctrine so fatal to the
security of property as that would be," so far from it, that not
only in circumstances where the length of time would make it
difficult to ascertain the true state of the facts, but where they
could easily be ascertained, and where it is perfectly clear that

relief would have been originally given upon the ground of constructive trust, it is refused to the party, who, after long acquiescence, comes into a court of equity to seek relief. The discountenance which courts of equity give to stale and antiquated demands for the peace of society, by refusing to interfere, where there has been gross laches in prosecuting rights, or long acquiescence in the assertion of adverse rights, is stated with great clearness by Mr. Justice Story, in the 2d vol. of his Commentaries on Equity, section 1520. And the doctrine so stated, is placed beyond all question by the authorities, collected in the note to that section ; see also 1 *Howard,* 189. Now, in this case, the assertion of an adverse right by the sale of this property, was in the year 1812, in which there has been an acquiescence until 1845, when this present bill was filed, or at least until July of that year, the date of the letter of the complainant's solicitor to the defendants, being a period of thirty-three years. The assertion of the hostile right by the defendant was flagrant and unqualified. It was by an actual sale of the property, and the acquiescence on the other side, was more than passive ; for the proof shows that the widow and administratrix of Gibbons, gave up the possession which she had held to that time. It is true the female complainant in this case was at that period a minor; but her minority terminated in the year 1831, and she did not exhibit her bill until the year 1845, being an interval of fourteen years, for which no excuse is given.

It seems to me, therefore, that upon the principle so explicitly laid down in the books, and so essential for the peace of society, that the complainant cannot have relief. The bill must therefore be dismissed.

---

JOHN GLENN, S. T. WALLIS and T. G. PRATT for Complainants.

JOHN J. LLOYD, T. P. SCOTT and J. V. L. MCMAHON for defendants.