WISHART (SLACOM v.). See Case No. 12,933.

WISNER v. BARNETT. See Case No. 17,914.

## Case No. 17,914.

### WISNER et al. v. OGDEN et al.

[4 Wash. C. C. 631.] [3]

Circuit Court, District of Columbia. April Term, 1827.

CONSTRUCTION OF WILL — PARTIAL INTESTACY — LIMITATIONS—TRUSTS—SUIT AGAINST EXECUTOR'S ADMINISTRATOR — PARTIES — JURISDICTION — DIVERSE CITIZENSHIP.

1. The testator devised as follows: "I give to my wife, her heirs and assigns, all my estate, real

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reversed in 3 Cranch (7 U. S.) 331.]
[3] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

and personal, excepting my outstanding debts, which I order my said wife. whom I appoint my executor, to collect, and give three persons that I shall hereafter direct her to give the same to." The testator died without naming the three persons, and giving any direction. The wife collected the debts, and invested them in securities; for one half of which the next of kin of the testator brought this suit. Held, that these outstanding debts did not pass by the will to the wife, as residuary legatee, or devisee or executrix, or as a trustee by implication; but they are to be distributed according to the statute of distributions of the state.

2. Where a bill in equity states a case to which the act of limitations applies, without bringing it within some one of the savings, the defendant may take advantage of the bar by demurrer.

[Cited in brief in Derrickson v. Cady, 7 Pa. St. 30; Cited in Perkins v. Rogers, 35 Ind. 141.]

3. The rule in equity as to the statute of limitations in cases of trusts is, that those trusts which are mere creatures of a court of equity, and not within the cognizance of a court of law, are not within the operation of the statute. So long as there is a subsisting and continuing trust, acknowledged or acted upon by the parties, the statute does not apply. But other trusts, which are the ground of an action at law, are within it. Under this rule, the statute does not apply in the state of New Jersey to a bill by legatees or distributees.

[Cited in App v. Dreisbach, 2 Rawle, 305; Hayward v. Gunn, 82 Ill. 389; Hedges v. Norris, 32 N. J. Eq. 197; Webster v. Newbold, 41 Pa. St. 492.]

4. This suit was against the administrator pendente lite of the executrix, (charging in the bill that the administrator had possessed himself of all the securities in which the outstanding debts had been invested, and claimed them as the property of his intestate,) and such of the next of kin as the bill charges had refused to join in the suit. It is in this case no objection for the want of parties that the legal representative of the testator is no party.

5. The executor or administrator of the deceased next of kin, who might be made a party, must be. It is not sufficient to make his devisee, or persons entitled to his estate parties.

6. If the jurisdiction of the court could be ousted by making all the parties concerned in interest plaintiffs; those who are citizens of the same state, with the real defendants, may refuse to join in the suit, and may be made defendants.

WASHINGTON, Circuit Justice. This is a bill in equity brought by some of the next of kin of Oliver Barnet, according to the statute of distributions of the state of New Jersey, against the administrator of Elizabeth Barnet, the executrix of the said Oliver Barnet, appointed by the orphan's court of this state, pending a controversy in that court concerning the validity of the asserted will of the said Elizabeth, and the rest of the next of kin of Oliver, the testator. The merits of the controversy depend upon the true construction of one of the clauses in the will of Oliver Barnet, deceased; and this question, as well as many others of minor importance, comes before the court for decision upon a special demurrer to the bill, filed by Isaac Ogden the administrator, pendente lite, of Mrs. Barnet. It becomes necessary, therefore, to state the material parts of the bill, upon which the different questions are raised. The bill alleges that Oliver Barnet, a citizen of this state, departed this life in December 1809, without issue, leaving his wife (the aforesaid Elizabeth,) and one brother named Joseph, and the children of a deceased sister Sarah Wisner, viz. Polydore B. Wisner, Henry B. Wisner, one of the plaintiffs, Harriet, the wife of Libeus Lathrop, and Mary, the wife of Oliver W. Ogden. That Joseph, the brother, and Polydore, the nephew of the testator, afterwards died; the former leaving two sons, Gideon and Ichabod, to whom he devised all the residuum of his personal estate; and the latter, leaving the other plaintiffs, his children. That Oliver Barnet, being at the time of his death seised and possessed of a large real and personal estate, and entitled to a considerable amount of outstanding debts, duly executed his last will and testament, in which is contained the following clause, viz.: "I give and bequeath to my beloved wife, Elizabeth Barnet, her heirs, and assigns, forever, all my estate both real and personal, excepting my outstanding debts, which I order my said wife, whom I hereby constitute and appoint my sole executrix, to this my last will and testament, to collect, and give three persons that I shall hereafter direct her to give the same unto." That the testator gave no direction to his wife as to the three persons to whom she should pay these outstanding debts; whereby they are to be considered (as the bill alleges) as undisposed of; and passed to the executrix as assets to pay debts, and to distribute according to the statute of distributions of New Jersey. The bill then charges that Elizabeth Barnet duly proved the above will, and took upon herself the burthen of its execution. That she collected all the outstanding debts, and placed the amount at interest, on bonds, mortgages, and other securities, which remained due at the time of her death, which happened in June 1825. That she left a paper purporting to be her last will and testament, which was fraudulently imposed upon her, whereby she was made to appoint Jonathan Ogden, since deceased, and Isaac Ogden, her executors; which paper, being offered for probate, was caveated, and is now sub judice in the orphan's court, where administration of her estate and effects, pendente lite, was granted to the said Isaac Ogden, who has possessed himself of all the evidences of the outstanding debts of Oliver Barnet. The bill further charges, that Ichabod and Gideon Barnes, Libeus Lathrop, and Harriet, his wife, and Oliver W. Ogden, and Mary, his wife, all of them citizens of the state of New Jersey, although equally entitled with the plaintiff, Henry B. Wisner, to the share of the outstanding debts of Oliver Barnet, as the representatives of Sarah Wisner, having refused to unite with the plaintiffs in this suit; and for this reason, they are prayed to be made defendants. The prayer of the bill is for an account as to a moiety of the outstanding debts, one fourth

of which is claimed as belonging to the children and grand children of Mrs. Wisner, and the other fourth to the two sons and devisees of Joseph Barnet; the bill admitting that the other half belonged to the widow of the testator. ·

The demurrer to this bill assigns eleven causes, the whole of which may be considered under the following heads: (1) The construction of the will of Oliver Barnet. (2) The bar of the act of limitations; and (3) The want of proper parties. The first presents the important question, since, if it be determined against the plaintiffs it renders the consideration of the other objections unnecessary; and if, in their favour, it will dispose of all the objections except those which come under the second and third heads.

I. It is contended in behalf of the representatives of Mrs. Barnet, that, by the omission of the testator to name the three persons to whom the outstanding debts were to be given, his widow became entitled to them —(1) As residuary legatee; if not so, then, (2) that she took them as undisposed of, in the character of executrix; and if in neither of these characters, then, (3) as a trustee by implication, upon a trust which the omission to name the cestui que trusts prevented her from executing; and consequently, that the property excepted from the devise to her, cannot be considered as undisposed of, but it remained with her, discharged of the trust.

1. In support of the first ground upon which the claim of Mrs. Barnet is asserted, the counsel for her administrator cited, and relied upon the case of the Duke of Marlborough v. Lord Godolphin, 2 Ves. Sr. 61. I have examined that case with atttention, and am clearly of opinion, that it is, in all its essential features, unlike the present. ·The Earl of Sunderland, by his will, devised to his wife £30,000, and, after some other bequests, he gives all the rest and residue of his personal estate to his eldest son Robert Lord Spencer, except such other legacies as he should indorse on his will in nature of a codicil. He afterwards indorsed on his will, that the £30,000 given to his wife should be to her use for life only, and after her death, to be distributed amongst such of his children, and in such proportions, as she, by any instrument in writing, in nature of a will, or by deed should appoint. His widow made a will, and thereby gave certain portions of the above sum to two of the children, who died in her life time, and the legacies to them were consequently lapsed. One of the questions in the cause was, whether those legacies passed under the residuary clause to Robert Lord Spencer, or were undisposed of, and belonged to the children of the first testator. Lord Hardwicke decided that they were not withdrawn by the exception from the residuary bequests, and of course could not be considered as money

undisposed of. That a residuary legatee or executor, stands in the place of an heir to take whatever may fall in, without the intention of the testator, as by operation of law; and consequently that the lapsed legacies must fall under the bequest to the residuary legatee. Now it is manifest that that case differs from the present in two essential particulars. In the first place, the £30,000 was not in fact excepted from the residuary bequest, the exception, as to its terms, being not of any specific sum or article, but "of such other legacies as he the testator should indorse on his will in the nature ·of a codicil." But the £30,000 was disposed of in the body of the will, and not by the indorsement, which operated merely ·as a modification of the bequest of that sum made by the will, by limiting the interest of the wife to a life estate, and disposing of the remainder among such of her children as she should appoint; but no legacy is given by the indorsement upon which the exception could, or was intended to operate. This is not a fanciful distinction; the reasons which have been ·stated being those assigned by the chancellor himself, as one of the grounds upon which he decided that part of the case.

Another ground upon which that decision was founded, and which strikingly distinguishes it from the present, was, that even if the £30,000 had been excepted, still the exception would say no more than the law would imply; since, if the exception had not been made, the personal estate was subject to any disposition which the testator might afterwards make by a codicil, and consequently, the exception, in the language of the chancellor, "nil operatur." It is very manifest that the exception of a sum of money from a general bequest which is not distinguished or distinguishable from the mass of the testator's property, is no indication of an intention to withdraw it from such general devise of all the testator's property, and can amount to nothing more than a declaration of his intention to dispose of that sum by a subsequent codicil, which leaves the general devise in full operation, if such subsequent disposition should. not be made. This is a very different case from an exception, or reservation of specific property, which the testator declares an intention to dispose of to some other person; in which case, the property, so excepted, is expressly and absolutely withdrawn from the general bequest. This distinction is taken and strongly enforced by the chancellor in the above case, in answer to the case of Davers v. Dewes, 3 P. Wms. 40, which was cited at the bar in opposition to the claim of the residuary legatee. In that case, the testator ·declared in his will, that he intended to dispose of all his household furniture by a codicil. He then proceeds to make some bequests, and afterwards gives all the residue of his personal estate not disposed of.

or intended to be disposed of by his codicil, to A. He afterwards made a codicil, but omitted to dispose of his furniture. The court decided that the furniture was not bequeathed by the will, but was reserved to be disposed of by the codicil; and consequently that it could not go to the residuary legatee, without a violation of the intention of the testator. This case is not to be distinguished from that now under consideration. In the one, furniture is excepted from the residuary bequest, and, in the other, the exception is of outstanding debts. They are both of them specific, distinguishable from the general mass of the personal estate, and, if disposed of by will, they would be equally treated as specific legacies, subject to all the rules applicable to that species of legacy. See, also, the case of Frederick v. Hall, 1 Ves. Jr. 396. I cannot, in short, imagine, how property of this description, excepted out of a general bequest, can be decided to pass under it, without violating the manifest intention of the testator. For I know of no form of words which could more distinctly express his intention that the specific property should not be included in the general devise than by excepting it from that devise, and reserving it to be disposed of to some other person, and in some other way. The claim of Mrs. Barnet, therefore, as a devisee of these outstanding debts, cannot be maintained.

2. We are next to inquire, whether she is entitled to those debts, in her character as executrix, by operation of law? The rule upon this subject is at this day perfectly well settled. The appointment of an executor vests in him, at law, all the personal estate of the testator, and if there be a surplus remaining, after satisfying the debts and legacies, he is entitled to it, in exclusion of the next of kin. But if it can be collected from any circumstance, or from any expressions in the will, that the testator intended for the executor, the office only, and not the beneficial interest in such surplus; equity will carry that intention into effect; by considering and treating him as a trustee for those to whom the law would have given the surplus in case of a complete intestacy. The rule is correctly stated by Fonblanc, vol. 2, p. 131, note 11, where all the cases in support of it are collected. One of the instances stated by him, in which this equitable principle prevails, is, where the testator appears to have intended to make an express disposition of the residue, but by some accident or omission such disposition is not perfected. A stronger case to illustrate and enforce this instance, in which the equitable principle prevails, can hardly be imagined than that of Bishop of Cloyne v. Young, 2 Ves. Sr. 91. Another instance is, where a legacy is given by the will to the executor, expressly for his trouble, or is given generally and absolutely, which last position is fully supported by the case of Cook v. Walker, cited in 2 Vern. 676; Farrington v. Knightly, 1 P. Wms. 544; Nourse v. Finch, 1 Ves. Jr. 344. It is true that the case of Foster v. Munt, 1 Vern. 473, would seem to place the exclusion of the executor from the residue upon the circumstance of the legacy being given to him for his care and trouble. But upon a view of all the cases upon this point, it is manifest, that there is no distinction between a legacy given to him upon that consideration, and where it is given generally. Both of the reasons which have been stated for excluding an executor from his legal right to the surplus, apply in their full force to the present case; for it is manifest that the testator intended, not only to dispose of the outstanding debts to three persons, most probably in his contemplation at the time he made his will, but to exclude his executrix from taking them, by withholding them from the general bequest to her. She is also a devisee of all his estate real and personal, with the exception of those debts, which she is ordered to collect for the use of the persons for whom they were intended.

3. The remaining ground upon which this claim is placed is, that the right to the outstanding debts vested in Mrs. Barnet by necessary implication, to enable her to dispose of them amongst the three persons to be designated by the testator.

The whole error of the argument upon which this claim is founded consists in the supposed necessity for vesting a legal estate by implication in Mrs. Barnet, in order to enable her to execute the trusts which the counsel for the defendants, not the will, raises. For, what trust had she to execute under this will, which the law did not require her to execute in her capacity of executrix? She is ordered to collect the outstanding debts, and to give them to the three persons that the testator should thereafter direct her to give them to. As executrix, it was her duty to collect the debts, and afterwards to dispose of the money as the testator should direct. The law constituted her a trustee for those purposes, and the will invests her with no other or greater powers. It gave her no power to select the objects of the testator's bounty, or to exercise a discretion as to the manner of apportioning the legacy among those objects in case he had named them. Had he named the three persons, and directed in what proportions they were to take, the case would have been precisely the same as if the nomination and direction had been contained in the will, and the law would then have pointed out the duties of the executrix. If the persons had been named, but no directions given as to the proportions to which they were severally to be entitled, the law would have considered them as tenants in common, and entitled to share the debts which might be collected equally between them. Their right would have been derived immediately under

the testator, and not under any act to be performed by Mrs. Barnet. But these new trusts and powers are inferred by the counsel from a particular expression in the devise, which they construe to vest in Mrs. Barnet a discretion which is no where expressed in the will. She is to give the money so collected to the three persons to whom he shall direct her to give it. It may well be asked, what sort of a gift is that which one person is compelled to make by the exercise of another's will, and in unconditional submission to that will? A gift implies, et vi termini, the exercise of an uncontrolled will in the donor, and if that does not exist, the disposition of the thing parted with flows from a duty or obligation imposed upon the agent by some superior, whose injunctions he is not at liberty to disobey. It is certainly any thing but a gift. The expression, therefore, when used in this sense, is most clearly synonymous with pay, transfer, deliver over, or any other expression of similar and appropriate meaning. It is stated in the fourth volume of Bacon's Abridgment (page 339), that any words in a will which manifest an intention to create or give a legacy, are sufficient for that purpose, as if the testator say "I do order or appoint to be paid, given or delivered" such a thing to a particular person. So, if the testator desire his executor to give a certain sum of money to another, it is a good bequest; clearly showing, if authority were required for that purpose, that the expressions mean the same thing, and that either of them amounts to a gift or bequest by the testator. The cases cited and relied upon by the defendants' counsel in support of the last proposition under this head, are in all their essential features unlike the present. In that of Harding v. Glyn, 1 Atk. 469, the wife took the estate, which she was desired to distribute at or before her death amongst the relations of the testator, beneficially as devisee; the objects of the testator's bounty were sufficiently designated to enable the court to execute the trust, and the power to select amongst those relations the individuals most deserving of the bequest, was vested by the will in the wife. Under these circumstances the court construed the estate devised to the wife to be only for her life, with a trust in favour of such of the relations of the testator as she might choose to give the property to. But it is added that, if the objects of the trust had been so uncertain that the court could not say who were intended, then the word "desire" would be construed, not as a trust, but merely as a recommendation, in which case the estate of the wife would be absolute. In the case now under consideration, Mrs. Barnet took no interest whatever under the will in the outstanding debts, which, in consequence of the omission of the testator to nominate the objects of his bounty, can be construed into an absolute estate in her, and she had no trusts to execute other than those imposed on her by law, as executrix. In the case of Martin v. Dough, 1 Ch. Cas. 198, there was an express devise of the £40 to the trustee, upon trusts which could not be executed in consequence of the failure of the testator to state them to the trustee. The devise was considered to amount to an exclusion of the right of the executor, and no question arose as to that of the next of kin. These are all the cases cited by the defendants' counsel which seem to bear upon this point; and I am of opinion, upon this first head, that the next of kin of Oliver Barnet are entitled to a moiety of the debts outstanding at the time of the testator's death, to be distributed amongst them according to the statute of distributions of this state.

II. The second general head of inquiry presented by the demurrer is, whether the right of the next of kin of Oliver Barnet is barred by the statute of limitations?

A preliminary question under this head was made by the plaintiffs' counsel, which must first be decided; and that is, whether the bar can with propriety be interposed in the form of a demurrer to the bill? This is a mere question of practice, and if it be unsettled in the English chancery court, the circuit courts of the United States may adopt that which is most likely to subserve the ends of justice. There can be no doubt but that the general course of the practice in those courts, as well as in the American courts of chancery, has been to set up the bar of the statute in the form of a plea. It must nevertheless be admitted that there are some very strong cases to sanction the practice which has been adopted in the present instance. In the case of Jenner v. Tracy, 3 P. Wms. 287 [note], a demurrer to a bill to redeem, after twenty years possession in the mortgagee, was allowed. In 2 Madd. Ch. Prac. 246, it is stated that, to a bill to redeem, if it appear that the defendant has had twenty years possession, he may plead the statute of limitation, or demur. This author cites Mitf. Pl. 213, who states that a demurrer has been allowed in such cases, and cites the above case from P. Williams, and the case of Orde v. Heming, 1 Vern. 418, as his authorities; but he adds that "the latter cases seem to the contrary." In the case from Vernon, the demurrer was overruled, not because advantage could not be taken of the statute by demurrer, but because the bill stated that the mortgager had agreed that the mortgagee should hold possession till he was satisfied. In the case of Foster v. Hodgson, 19 Ves. 182, which was a bill for an account, which stated that there had been no demand for twelve years, the chancellor allowed a demurrer to the bill, but with great hesitation. And it was stated by the counsel in the case of Deloraine v. Browne, 3 Brown, Ch. 646, that Lord Kenyon had allowed a demurrer in the case of Beckford v. Close [cited in 4 Ves. 476]. These are all the cases I have met with on that side of the question. The case of Aggas v. Pickerell, 3 Atk. 225, is the only one

which was cited against the practice. In that Lord Hardwicke positively denied that advantage could be taken of the statute by demurrer; assigning as the reason for his decision, that it would prevent the plaintiff from bringing himself within the savings of the act, by replication, or by evidence on the plea, or by amending his bill. The soundness of the reason upon which this decision is founded may, I think, be questioned, since the plaintiff may, in all cases, avail himself of any savings in the statute applicable to his case, by alleging the fact upon which it is founded in his bill, which would compel the defendant to resort to his plea or answer. In the above case of Foster v. Hodgson, it was stated by the chancellor that in cases where the statute of limitations might be pleaded, the bill ought to allege the facts, to take the case out of the statute, if such exist. Where the defendant means to rely, not upon the act of limitations as a bar, but upon length of time, upon which to raise a presumption against the plaintiff, he undoubtedly cannot do so by demurrer. Deloraine v. Browne, 3 Brown, Ch. 646; Edsell v. Buchanan, 2 Ves. Jr. 83; 4 Brown, Ch. 254.

Upon the whole, I am inclined to think that in cases where, from the allegations in the bill, the statute of limitations may be urged as a bar of the remedy, it may be done in the form of a demurrer. I should have been very glad to have got clear, for the present, of the statute of limitations, by putting the defendant to his plea; as the question, whether the act of limitation will apply to a suit brought by legatees, or distributees, will turn very much upon another, which is, whether those persons have an adequate remedy to recover their legacies or distributive shares at common law, under the statute of this state; which latter question was merely glanced at by the counsel upon the argument, but was by no means as fully spoken to as its importance required.

The rule applicable to this subject appears to me to be very intelligibly and correctly laid down in the case of Kane v. Bloodgood, 7 Johns. Ch. 90; which the learned chancellor states to be, that those trusts which are mere creatures of a court of equity, and not within the cognizance of a court of law, are not within the operation of the statute of limitations; that so long as there is a subsisting and continuing trust, acknowledged, or acted upon, by the parties, the statute does not apply; but that other trusts which are the ground of an action at law are within the statute of the limitations. Upon these principles, he questions the correctness of his own decision in the case of Decouche v. Savetier, 3 Johns. Ch. 190, that the statute could not be pleaded to a suit in equity brought by legatees or distributees, the statute of New York having provided a legal remedy in those cases. Upon examining this statute, I find that it enables a legatee, or distributee to bring an action of debts, detinue, or account, against the executor or administrator, to recover, (in case it appear that there are assets sufficient to pay the debts and other legacies) the whole, or if not, his proportionate share, and the court before whom the action is brought is empowered to appoint auditors to ascertain the facts necessary to enable it to decide the cause.

If I rightly comprehend the statute of New Jersey upon this subject, its provisions are different from the one just referred to. It directs the executor's or administrator's bond to be taken to the ordinary, but gives him no power, as it would seem, to call the executor or administrator to account; this power being vested in the orphan's court; which is to order distribution, on the account being allowed, and to decree and settle such distribution when the persons entitled may have their remedy at law. See Rev. Laws, pp. 177, 178, §§ 11, 12. "But in point of fact," observes Mr. Griffith in his very useful and learned work entitled the Law Register, vol. 4, 1192, 1193, "the orphan's court seldom make any decree for distribution, or decide to whom the surplus is to be paid. The practice has been for those entitled to distribution, either to sue the bond, or to bring assumpsit at law against the administrator, founded on the statute, stating the amount settled, the plaintiff's title, and averring the sum due to him as a distributee." "Doubtless," he adds, "the true way is for the orphan's court to decree distribution, and from time to time to settle the sums due to any particular person on application and hearing, &c. And then the court can proceed to compel payment (perhaps) by attachment, or the party may apply to the ordinary to sue the bond, or an action would lie on the statute after a decree made, settling the right and the amount." "It may be questioned," he observes, "if the ordinary can sue the bond till the orphan's court has ordered distribution, and determined to what the party is entitled, as distributee." The above quotations, taken in connection with the provisions of the statute, render it, I think, doubtful at least, whether the courts of common law in this state have a concurrent jurisdiction with the other courts in suits of legatees and distributees; since it would seem that no action can be brought except for what is settled and decreed by the orphan's court; the action at law seeming to have been provided merely to enforce the decree of, or adjustment made by that court. My present impression is, that the act of limitations does not apply in this case, although it is entertained with so much hesitancy, that I shall consider the question as open for argument, should it be relied on in the answer.

III. The last general head under which the objections raised by the demurrer have been classed, is the want of proper parties.

It is objected: (1) That the executor or administrator of Oliver Barnet ought to be made a party. (2) That the executors or administrators of Joseph Barnet, and of Polydore Wisner, are not parties. (3) That Ichabod and Gideon Barnet, and Libeus Lathrop and Harriet his wife, and Oliver W. Ogden and Mary his wife;

ought to have been parties plaintiffs, instead of defendants.

1. The first of these objections seems to be fully answered and removed by the case stated in the bill, and the relief prayed for. The bill charges that Elizabeth Barnet, in her life time, collected all the outstanding debts; and that since her death, the defendant, Isaac Ogden, as her administrator, possessed himself of all the mortgages, bonds, bills and notes, and other securities for the outstanding debts due to Oliver Barnet; as well those which remained outstanding in his name, as those which had been changed and renewed in the name of his executrix; that he has made an inventory thereof as the property of the said Elizabeth Barnet, claiming the whole as such, and denying the right of the plaintiffs to any part thereof; and the prayer is, that Ogden may account for the outstanding debts; the evidences of which he has in his possession, and may pay over to the plaintiffs their proportion of the same, or may assign to them the securities taken therefor. Now, although it is true that if this bill were brought for an account of the administration of the estate of Oliver Barnet, and for a distribution of the general assets of that estate; the only proper party to such a suit would be the legal representative of that estate, which the administrator of Mrs. Barnet certainly is not; yet it is not to be questioned, that if her administrator has obtained the possession of specific property, to which others are entitled, either as legatees or distributees, those persons may follow such property into his hands, and may treat him as a trustee thereof for their use: and in such case, the legal representative of the testator need not be made a party, since no decree is asked against him. That is precisely the present case, particularly in regard to such of the securities as were renewed in the name of Elizabeth Barnet. How far it may be necessary to make the legal representatives of Oliver Barnet a party defendant, as to such of the securities as may continue to be in the name of the testator, if any such there be; is a question which does not arise upon this demurrer.

2. The second objection is unquestionably well taken. The only person entitled, in law or in equity, to the assets belonging to the estate of Joseph Barnet, and of Polydore Wisner, is the executor or administrator of those persons, upon whom the duty to pay their debts and legacies, and to distribute the surplus which may remain, is devolved by law. Those who are entitled to the assets remaining after debts and legacies paid, may undoubtedly maintain their bill for an account against the executor, in case the assets have come to his hand, or against him and those who withhold the assets; but it is absolutely necessary in the latter case, that the executor or administrator in whom the legal right to the assets is vested, should be made a party.

3. The last objection is entirely without foundation: as I hold it to be a settled rule of practice in the courts of chancery, that if there be more parties than one, all of whom must be before the court, in order to enable the court to make a decree, and some of them refuse to join in the suit as plaintiffs; those who bring the suit may, and are obliged to make the other parties defendants, unless in those cases where the parties, being very numerous, some of them are permitted to sue for themselves and on behalf of those others.

In this case, the bill states, and the demurrer admits, that the persons to whom this objection applies had refused to join in the suit; which I hold to be a sufficient reason for making them defendants. But it is suspected by the defendants' counsel, and the argument proceeded mainly on that suspicion, that the alleged refusal of those defendants to unite in the suit was a mere contrivance to give jurisdiction to this court; since those defendants, being citizens of this state, could not sue their co-defendant, who is also a citizen of the same state. This fact may have a better ground than suspicion to stand upon; it may be admitted as a truth; and yet there is no act of congress, and no principle to be extracted from the constitution of the United States, which forbid such an arrangement to be made for the avowed purpose of maintaining a suit in the courts of the United States. If a citizen of one state, with a view to enable him to bring a suit in those courts, should change his domicil, bona fide, and make himself a resident citizen of another state, I am yet to learn that the motive for his removal, if clearly proved, or avowed, would oust the jurisdiction of the court. The ninth cause of demurrer, which could not be well included under either of the above general heads is, in substance, that the plaintiffs claim as distributees, and yet set forth a will of Oliver Barnet, and show that he died testate. There is certainly nothing in this objection; speaking technically, the claim of the next of kin to a part of the personal estate which is undisposed of by the will, and to which the executor is not entitled, is not that of distributees, in the strict sense of the statute of distributions, which is confined to cases of intestacy. But a court of equity, where the right of the next of kin is established, will declare the executor to be a trustee for them, and will follow the rule of the statute in distributing the personal property so undisposed of. See the case of Davers v. Dewes, 3 P. Wms. 40. Upon the whole, my opinion is, that the only valid cause of demurrer which is assigned is the not making the executor or administrator of Joseph Barnet, and of Polydore Wisner, parties. The consequence is, that, unless the plaintiff obtains leave to amend, so as to get rid of this objection, the demurrer, which goes to the whole bill, must be allowed.

THE COURT overruled the demurrer as to all the causes assigned, except as to the want of parties as above mentioned, and allowed it so far; and on motion to amend the bill, so as

to make the legal representatives of Joseph Barnet and Polydore Wisner, parties, THE COURT ordered the cause to lie over for that purpose; reserving till the next court a decision as to costs.