## FOGAL *a.* PIRRO

*New York Superior Court ; Special Term, April,* 1860.
*Again at General Term, December,* 1862.

PLEADING.—STATUTE OF LIMITATIONS.—FORECLOSURE.—PARTIES.
—MORTGAGEE IN POSSESSION.—BILL TO REDEEM.—IMPROVE-
MENTS.—ACCOUNTING.—ANCIENT DEED.

The Statute of Limitations does not begin to run against the right of a remainder-
man to redeem real estate from the mortgagee in possession under the termor,
until the determination of the precedent estate.

The title of the Revised Statutes, "Of the time of commencing suits in a court of
equity" (2 *Rev. Stat.*, 301, §§ 49-53), superseded the whole doctrine of lapse of
time, as previously applied in a court of equity, fixing a positive rule for equity
suits, just as absolute and definite as the statutes had prescribed for suits at
law.

In cases arising before, as well as since the Code, the defence of the Statute of
Limitations can be interposed only by answer.

In pleading the Statute of Limitations in an action brought to obtain redemption
of mortgaged premises, the essential features of the defence are, possession for
over ten years without any payment on account of the mortgage, or any ac-
knowledgment of the relation of mortgagor and mortgagee, or any payment of
rents and profits, or accounting for them.

But, an answer averring a possession in the defendant and those under whom he
claims for twenty years, adverse and hostile to the plaintiffs, and under a title
vested in him, the defendant, or those through whom he is entitled, is suf-
ficient.

A mortgagee in possession has the right to require full payment of the amount
due, before he can be called upon to surrender the right or possession to any
extent.

But in an action, by several plaintiffs, to obtain a redemption of premises from
the mortgagee in possession, where the right of some of the plaintiffs is barred
by the Statute of Limitations, the plaintiffs, not barred, are entitled to redeem
their share of the land on payment of their proportion of the debt.

On a redemption, the mortgagee in possession, who knew of the existence of the
mortgage, is not, as a general rule, entitled to an allowance for new erections
and improvements upon the mortgaged premises. But this rule is subject to
many exceptions.

Where the mortgagee in possession, who has in good faith disavowed the char-
acter of mortgagee, and claimed in hostility to such a character, is obliged to
submit to a redemption, the general rule is, that the improvements must be
paid for.

Principles of accounting between mortgagor and mortgagee in possession on a
judgment for redemption of the mortgaged premises.

The mere production of an ancient deed by the party claiming under it, does not entitle him to read it in evidence without further proof.

As against an action of ejectment by the remainder-man, the Statute of Limitations does not begin to run in favor of a person in possession under the termor till the determination of the precedent estate.

I. *April*, 1860.—Trial by the court.

This action was brought by Catharine Fogal, Sophia Randall, Peter Provoost, Amanda Tyte, Charles M. Day, John Fogal, Alexander Tyte, and Colloon Randall, against Joseph Pirro, and John Raab, to redeem a certain lot in Essex-street, New York city, alleged, in the complaint, to belong in fee to the plaintiffs, from the operation of a certain mortgage, and to regain the premises.

The complaint alleged that on the 9th of November, 1804, Peter Colyer, of Kings county, was seized in fee and possessed of three lots of ground, in the city of New York, one of them being on Eagle-street; that he then made his will, whereby he gave to his three daughters, Eve, Margaret, and Catharine, each one lot of land, and died soon after without having revoked or altered such will, and leaving his said three daughters and other children, and his widow, him surviving, and that at the time of the testator's death each of his said three daughters was married;—Eve to John Provoost; Margaret to George Tiebout; and Catharine to John D. Provoost.

That by a deed dated May 10, 1805, made between Margaret Colyer, widow of Peter Colyer; Charles Colyer, and Catharine his wife; Jacobus Colyer, and Jane his wife; Peter Colyer, and Eve his wife; William Van Cott, and Jane his wife; John Provoost, and Eve his wife; George Tiebout, and Margaret his wife; and John D. Provoost, and Catharine his wife; reciting, among other things, that the said Charles, Jacobus, Peter, Jane, Eve, Margaret, and Catharine were the children, devisees, and heirs at law of Peter Colyer, deceased; that doubts had arisen respecting the construction of his will, and that the parties desired to carry the intention of the testator into effect; the said parties, other than John D. Provoost, and his wife Catharine, granted, bargained, and sold to the said Catharine, and to her heirs and assigns forever, the lot of ground in Essex-street, which was the subject of this action; and that the said

Catharine was and continued in possession of such lot up to her death in 1810.

That in June, 1809, John D. Provoost, and Catharine his wife, executed a mortgage to Ezekiel Bishop, covering the lot in Essex-street, and also a lot in Charlton-street, which belonged to John D. Provoost, to secure to Bishop the payment of $800, one year from the date of the mortgage.

That Catharine, the wife of John D. Provoost, died in February, 1810, leaving her husband, and her children, Margaret, Catharine, Eliza, Sophia, and Peter, surviving, and that Margaret, the widow of Peter Colyer, died in 1811.

That after the death of his wife, John D. Provoost continued to hold possession of the Essex-street lot until September, 1815.

That in July, 1815, a foreclosure suit was brought in chancery, upon the said mortgage, by Bishop against John D. Provoost as sole defendant, which resulted in a decree of foreclosure to satisfy the amount then due, with costs, amounting in all to $1,077.98; and that in September, 1815, the lot in Charlton-street was sold under the decree for $850, to James Stansberry, and the lot in Essex-street to Bishop, the mortgagee, for $750, who respectively paid their bids, and received deeds of conveyance in fee from the master. That in November, 1815, Bishop conveyed the Essex-street lot to John Ackley; in 1822 Ackley conveyed it to William Nelson, who died in possession; in 1850 the lot was sold under judgment, in a suit to which none of the plaintiffs in this action were parties, to John Raab, who received a deed of conveyance therefor, from the referee and Nelson's heirs, and entered into possession; and in August, 1856, Raab conveyed the premises to Pirro, the defendant in this action.

That John D. Provoost died in 1841. Margaret, daughter of Catharine Provoost, married E. Morgan, and in 1832 died without issue, and intestate. Eliza, another daughter, married Charles Day, and in 1838 died his widow, leaving two children—Charles M., one of the plaintiffs in this action, and Amanda, who married Alexander Tyte (and who was, with her husband, named as plaintiff). Catharine, daughter of Catharine Provoost, married John Fogal (both plaintiffs); Sophia, another daughter of Catharine Provoost, married Colloon Randall (also plaintiff); and that all the last-named persons, as well

as Peter Provoost, were still living.  That the mortgage exe-
cuted by John D. and Catharine Provoost to Bishop, if not
satisfied by the decree, had been fully paid and satisfied; that
the defendant had possession of the premises, claiming to be the
owner in fee, and refused to surrender or to inform the plaintiff
what, if any thing, was due upon the mortgage.

The plaintiffs demanded judgment, requiring the defendant
to surrender the premises, *or* that an account be taken of the
amount, if any thing, due upon the mortgage; and that on pay-
ment by the plaintiffs of that amount, the mortgage be declared
satisfied, and the defendant be required to surrender.

The answer admitted the conveyance from Raab to the defend-
ant Pirro; alleged that at the time of the commencement of this
action the defendant had, and still had, a valid title to and was
in possession of the premises, as owner in fee; that the defend-
ant, his predecessors and grantors, have held and possessed the
premises adversely to the pretended title of the plaintiffs for more
than twenty years prior to the commencement of the action;
and that neither the plaintiffs nor their ancestors had been
seized or possessed of the premises within that period; and
denied every thing in the complaint not admitted in such an-
swer.

Upon the trial in March, 1860, the plaintiffs proved the title
in fee to have been in Peter Colyer, by a conveyance made to
him in 1784.  They then read in evidence the will of Peter
Colyer, mentioned in the complaint, dated November 9th, 1804.
The devise to the plaintiff's ancestor, Catharine Provoost, is in
the following words: " Item—I give and bequeath to my
daughters Eve, Margaret, and Catharine, each one lot of land,
lying in the city of New York, situated one in Eagle-street, two
in Essex-street."

The plaintiffs then offered in evidence, *as an ancient deed*,
without further proof, a paper purporting, in the body of the
instrument, to be a deed executed by the widow and children
of Peter Colyer, dated May 10, 1805, which was objected to by
the defendant, admitted, and exception taken.

They also proved the mortgage executed by Provoost and
wife to Bishop, in 1809, with the decree and sale on foreclosure,
in 1815, as stated in the complaint; that the complainant re-
ceived the full amount of his decree, including costs, out of the

proceeds of the sale; and that the remainder of such proceeds, being $511.94, was paid over to John D. Provoost, the defendant in such foreclosure suit. Also, that John D. Provoost died in 1841, leaving five children—of whom Sophia and Catharine were married before their father's death, and, with their husbands, were still living. Eliza married Charles Day, and survived her husband (who died in 1838) some years, and died leaving two children, Charles Day and Amanda Tyte. Margaret died in 1832, leaving no issue; and her husband, since deceased; and Peter was yet living.

Catharine Fogal, one of the plaintiffs, and wife of another plaintiff, was then offered as a witness by the plaintiffs; the defendant's counsel objecting, on the ground that she was the wife of one of the plaintiffs. The objection was overruled, and the court directed that the witness be sworn on behalf of the plaintiffs, other than herself and her husband; the defendant's counsel excepting. In giving her testimony, after stating that she was the daughter of John D. Provoost, and giving some detail of marriages and deaths in the family, she said: "I recollect that my mother had a lot in Essex-street. I have been on the lot in Essex-street as long as I remember; and during the life of my Aunt Tiebout, she had possession of it; my mother granted her the use. I know that lot; I played on it." Upon her cross-examination, she said: "My mother is dead ever since I was ten years of age; my father was living when I played on the lot in Essex-street; nobody lived there in 1837; it was vacant; there was no house on it as long as my mother lived; there were two lots in Essex-street that we played on." No further evidence was given by this witness, or any other, touching the possession of the property by Catharine, or her husband.

Colloon Randall, one of the plaintiffs, and husband of another, was also offered as a witness, sworn in the same manner, and testified as to marriages and deaths in the family, under like objections and exceptions.

The plaintiff then rested, when the defendant's counsel moved to dismiss the complaint; which motion was overruled, and exception taken.

The defendants proved the conveyances to Raab in 1850; that he then entered into possession, erected buildings, received

rents, &c.; and also his deed to Pirro, and the entry of the latter in 1856; and the case was then argued and submitted.

The judge, in a written opinion, decided that the plaintiffs, Fogal and Randall, were entitled to redeem the whole or a portion of the mortgaged premises, and by an order of court sent the cause to a referee, to take and state an account, showing the amount due upon the mortgage, assuming that $227 was due in 1815, and computing interest after August 1841 (the date of the death of John D. Provoost), and also the amount paid by Bishop, and the several persons holding under him for improvement, taxes, and assessments; and the amount of the rents and profits received, or which, by due care and diligence, might have been received by them,—and to report: to which order the defendant excepted.

The referee reported in detail, showing (with corrections made by the court) the amount due against the mortgagors to be $5,534.07; which was excepted to by the defendants.

Upon the coming in of the report, the cause was now again brought on to be heard on the pleadings, proofs, and referee's report.

*John Townshend*, for the plaintiffs.

*Charles C. Egan*, for the defendant Pirro.

HOFFMAN, J.—The property of which redemption is sought, belonged originally to Peter Colyer, of whom Catharine, wife of John D. Provoost, was a daughter. I think I am warranted in concluding, that under the will and under the deed of the 10th of May, 1805, this property vested in Catharine.

She united with her husband in the mortgage. The bond was given by him.

When the foreclosure took place in 1815 she was dead, leaving several children.

John D. Provoost, the husband, being made a party, and the only party to the foreclosure, all his right passed to Bishop the purchaser, as if he had executed a conveyance to him.

The consequence is, that the right of possession and of the pernancy of the rents and profits vested in Bishop, until the death of Provoost, in 1841.

Hence the children could not have brought an action of eject-

ment for the possession, during their father's life. (Jackson *a.* Schoonmaker, 4 *Johns.*, 390; Jackson *a.* Minkler, 10 *Ib.*, 480; Adair *a.* Lott, 3 *Hill*, 182.) Where the wife became entitled to the premises as heir at law, during coverture, and the husband conveyed his life estate therein, and his grantee continued in possession for more than thirty years, the husband still living, she may, after the decease of her husband, make an entry and recover the land. (Mellus *a.* Snowman, 8 *Shipl.*, 201.)

It appeared to me, at the trial, to be equally clear that equity in this case followed the law, and that a bill to redeem could not be brought by the children of Catharine, entitled in remainder, until the death of the father.

But upon examining the authorities, this is by no means clear. At any rate, there is a distinction of no little moment.

I refer to the case of Raffety *a.* King (1 *Keen*, 601), in which all the previous cases are carefully examined by the Master of the Rolls. There a piece of land was vested, by devise of her husband, in Mary, wife of John Dean, for her natural life or widowhood; and upon her death or marriage, in Vesey Raffety and his heirs, in trust, to sell and apply the proceeds among the testator's children. The property was subject to a mortgage term; and after the testator's death, the widow and trustee united in conveying the land in fee to the mortgagee, for the mortgage debt, and a further sum of money. Manning, the mortgagee, then entered upon the land in 1796, and he and persons under him had continued in possession until the commencement of the suit. Mary, the widow, died in 1832. Before 1836, the children of the testator filed a bill to declare the mortgage discharged, and have a reconveyance; or to redeem, if the mortgage was a subsisting charge. It had been assigned to a trustee to attend the inheritance, at the time of the conveyance, in 1796.

It was held, that when a mortgagee enters in possession in his character of mortgagee alone, or by virtue of his mortgage alone, he is for the period of twenty years liable to account, and is a trustee for the mortgagor; but if the mortgagor permits the mortgagee to hold for twenty years, he loses his right of redemption, and the title of the mortgagee becomes absolute in equity. In such a case, the time runs against the mortgagor from the moment of taking possession by the mortgagee; and contin-

ues to run against all those claiming under the mortgagor, whatever may be the disabilities to which they may be subjected.

But if the mortgagee enters, not in his character or in his right of mortgagee only, but as purchaser of the equity of redemption, he must look to the title of his vendor, and to the validity of the conveyance he takes; and if the conveyance be such as, in law or in equity, only gives for his benefit the estate of a tenant for life, he must take that estate subject to the duties which are attached to it in the relation which subsists between the tenant for life and the remainder-man.

One of those duties is to keep down the interest of the mortgage; and having united in himself the two characters of mortgagor and mortgagee, he must, in the language of Chief Baron MACDONALD, 'be considered to have supported the rights and discharged the duties of each.'

"He owes a duty quite distinct from that which belongs to him in the mere character of mortgagee. So it was held in Corbett *a.* Barker, and Reeve *a.* Hicks; and in the judgment upon the plea in Ravald *a.* Russell, the mortgagee being purchaser of the equity of redemption, and having taken insufficient conveyances, obtained the husband's interest, and nothing more. The length of possession did not avail him.

"The argument on which it is contended that time ought to run against the remainder-man in all cases, is, that as the remainder-man may redeem, he ought to be barred if he neglects to do so; and, speaking generally, it is clear that the remainder-man has an interest which, as against the mortgagee, entitles him to redeem. But if the mortgagee purchases the interest of the tenant for life, it is by no means so clear that he can redeem.

"'Samuel Manning having entered as purchaser, and having, during the life of John Dean, united in himself the character of mortgagor and mortgagee, I think that during the continuance of that life, time did not run against the persons interested in remainder."

The case of Ravald *a.* Russell (1 *Younge,* 19), is scarcely distinguished from the one before me, and the plea of the Statute of Limitations was there overruled; and Corbett *a.* Barker (3 *Anst.,* 755), as ultimately determined, is decisive.

The right of action then did not accrue until the death of John D. Provoost, in August, 1841.

At that time, his children, and the children of Catharine living, were the plaintiffs; Catharine Fogal then married to John Fogal, and her husband still living; Margaret, who died in 1832 without children, and married to one E. Morgan, the plaintiff. Sophia then married Colloon Randall, who is still living, and party to this action; Eliza then married Charles M. Day, and who died in 1845 or 1846, leaving the plaintiffs Charles M. Day and Amanda Tyte, her children and heirs at law, her husband being also dead; and the plaintiff Peter. Amanda was married in 1844 or 1845.

The present action was commenced in December, 1858.

The plaintiffs, Catharine Fogal and Sophia Randall, being under disability at the time of the right accruing, and so remaining when it was commenced, would not have been debarred by the Statute of Limitations, had that been properly set up in the pleadings. The act (2 *Rev. Stat.*, 301, §§ 52, 53) would govern the case. (*Code*, § 73.) They would have ten years, after disability removed, to sue.

But as to Peter, and the children of Eliza Day, the statute would, I apprehend, have been a bar.

But the Statute of Limitations is not, in terms, set up in the answer. I am inclined to think that the decision in Lefferts *a.* Hollister (10 *How. Pr.*, 383) is correct, and that the last clause of the 74th section of the Code applies to cases in which the cause of action arose before its adoption.

But if this is not so, it was always a rule that the Statute of Limitations must be set up by demurrer, plea, or answer. (Humbert *a.* Trinity Church, 24 *Wend.*, 58; Sears *a.* Shafer, 6 *N. Y.* (2 *Seld.*), 268; Fyson *a.* Pole, 3 *Younge & Coll.*, 266; Harrison *a.* Borwell, 10 *Sim.*, 382; Crutcher *a.* Trabue, 5 *Dana*, 82; Dorsey *a.* Dorsey, 6 *Gill & J.*, 12.)

It is insisted, on behalf of the defendant, that the statute is sufficiently set up—that the defence may be taken advantage of under the averments of the answer.

That is a question which deserves more argument and consideration than it has yet received. I do not find it necessary now to determine it, because I am clearly of opinion that a redemption in favor of some must be adjudged, and hence the account must be taken.

There are two views of importance and some nicety.

Fogal *a.* Pirro.

1. Either the plaintiffs Fogal and Randall redeem in full, paying off the whole debt on the mortgage and obtain possession, when the claims of the others will be adjuged in another action between them; or, 2. For the benefit of the defendant, there is a partial redemption for the interests of the two parties named, the defendant standing in the place of the plaintiffs barred. I have looked into the subject enough to see that these questions are of moment and nicety. (See Bell *a.* Mayor, &c., of N. Y., 10 *Paige*, 49, 71.) Certainly the defendant may require that it be not partially, but all redeemed.* When the account is taken, they can be passed upon.

I consider that there must be a redemption, complete or partial, because I am prepared, in any event, to adopt the rule laid down in Wade *a.* Johnson (5 *Humph.*, 117), that "where a tract of land belonging to tenants in common had been adversely held for a period fixed by the Statute of Limitations, and some of the tenants have been of age during that time, and others not, the interest of each tenant is barred, or otherwise, as he may be within or without the saving of the statute.

II. *December*, 1862.—Under the foregoing opinion and decision, judgment was entered, dismissing the complaint as to the plaintiffs, Peter Provoost, Amanda Tyte, Charles M. Day, and Alexander Tyte (upon the ground that they were barred by the Statute of Limitations), directing that Catharine Fogal and Sophia Randall pay to the defendants, within three months, $2,767.03, being one-half the amount found due upon the computation of the referee, as corrected; and that upon such payment being made, the defendant execute and deliver to them his deed, conveying to them one undivided moiety of the premises, and directing that the complaint be dismissed as to those plaintiffs, in case they should fail to pay within the time limited. The defendant excepted to some of the findings of facts and conclusions of law filed by the judge, and appealed to the general term. The plaintiffs, Peter Provoost, Charles M. Day, Amanda Tyte, and Alexander Tyte, excepted to so

* Compare Bogert *a.* Coburn, 27 *Barb.*, 230.

much of the judgment as dismissed the complaint as to them, but did not appeal.

*Charles C. Egan*, for the appellant.—I. The complaint should have been dismissed. 1. It did not state facts sufficient to constitute a cause of action. (Dunlap *a*. Gibbs, 4 *Yerg*., 94; Hoare *a*. Peck, 6 *Sim*., 51; Cuthbert *a*. Creasy, 4 *Bligh*., *O.S.*, 125; Wienes *a*. Ogden, 4 *Wash. C. C.*, 631; Fyson *a*. Pole, 3 *Younge & Coll.*, 266; *Story's Eq. Pl.*, 484, 503, 529; 3 *Rev. Stat.*, 5 ed., 503, § 78; Humbert *a*. Trinity Church, 7 *Paige*, 195; 3 *Atk.*, 313; Jenner *a*. Tracy, 3 *P. Wms.*, 287, *n*. B; Beekman *a*. Frost, 18 *Johns.*, 544, 560, per SPENCER, J.; Giles *a*. Baremore, 5 *Johns. Ch.*, 545, 553; Kidd *a*. Cheyne, 18 *Jur.*, 348; *Story's Eq. Pl.*, § 426; 1 *Story's Eq. Jur.*, 365, and *n*.) 2. The whole of the premises were claimed by all, and three could under no circumstances recover. (Cole *a*. Irvine, 6 *Hill*, 634; Gillett *a*. Stanley, 1 *Ib.*, 121; Miller *a*. McCan, 7 *Paige*, 451; *Adams' Eq.*, 3 Am. ed., 674; *Story's Eq. Pl.*, 3 ed., § 185; 1 *Story's Eq. Jur.*, §§ 484, 490; Henly *a*. Stone, 3 *Beav.*, 355.) 3. No disabilities were alleged, and on the face of the complaint the rights of all the plaintiffs were gone by lapse of time. (Beekman *a*. Frost, 18 *Johns.*, 544, 560; Giles *a*. Baremore, 5 *Johns. Ch.*, 545, 553; 3 *Atk.*, 313; 3 *P. Wms.*, 287, *n*. B.)

II. Catharine Provoost was not shown to have been seized in fee of the premises at her death. 1. The pretended will was improperly admitted. (Jackson *a*. Luquere, 5 *Cow.*, 221.) But it gave her only a life estate. (Harvey *a*. Olmsted, 1 *N. Y.* (1 *Comst.*), 483; Olmstead *a*. Olmstead, 4 *Ib.*, 56; Edwards *a*. Bishop, *Ib.*, 61; Mesick *a*. New, 7 *N. Y.* (3 *Seld.*), 163.) 2. The unrecorded deed was improperly received in evidence as an ancient deed. (1 *Greenl. Ev.*, 9 ed., 28, § 21; 1 *Ib.*, § 144; citing Jackson *a*. Luquere, 5 *Cow.*, 221; Jackson *a*. Lamb, 7 *Ib.*, 431; Wilson *a*. Betts, 4 *Den.*, 201; Hewlett *a*. Cock, 7 *Wend.*, 371; 1 *Greenl.*, § 510, *n*. 2.) 3. It was not executed by four of the parties in interest and referred to, nor acknowledged by any, and, therefore, could not pass a title to the estate of a *feme covert*. 4. There was no evidence that the parties executing it were the children of Peter Colyer. (Jackson *a*. Browner, 18 *Johns.*, 37; Stokes *a*. Dawes, 4 *Mason*, 268; Jackson *a*. Russell, 4 *Wend.*, 543; S. C., in error, *sub nom*. Russell *a*. Jackson, 22 *Ib.*, 277;

Carver *a.* Jackson, 4 *Pet.*, 83 ; Schermerhorn *a.* Negus, 2 *Hill*, 335.) 5. The deed, if it conveyed any thing to Catharine Provoost, gave her but five-sevenths. 6. Catharine Fogal was an incompetent witness. (1 *Greenl. Ev.*, 9 ed., 481, §§ 334, 335 ; Hasbrouck *a.* Vandervoort, 9 *N. Y.* (5 *Seld.*), 153.)

III. Upon condition broken, the legal title to the estate became absolute in Bishop ; and he could have obtained possession without even notice to the plaintiffs, either by ejectment or advertisement. (1 *Rev. L. of* 1813, 373, ch. 32, §§ 5, 10 ; Phyfe *a.* Riley, 15 *Wend.*, 248.) The sale under decree of foreclosure in equity, was equivalent to sale under the power ·by advertisement. (See Doolittle *a.* Lewis, 7 *Johns. Ch.*, 45 ; Slee *a.* Manhattan Co., 1 *Paige*, 48, per WALWORTH, Chancellor ; *Laws of* 1842, 365, ch. 277, § 8.)

IV. In the absence of proof of title in Catharine, as well as to quiet the title, the court will presume that he was seized in fee by deed or otherwise. (1 *Greenl. Ev.*, 9 ed., §§ 16, 17 ; Ricard *a.* Williams, 7 *Wheat.*, 109 ; Brattle-street Church *a.* Bullard, 2 *Metc.*, 363.) Possession less than twenty years, coupled with circumstances indicative of ownership, has been held sufficient for the presumption of a grant. (Sumner *a:* Child, 2 *Conn.*, 607, 628, 632 ; Clark *a.* Faunce, 4 *Pick.*, 245.)

V. Provoost never had an estate, as tenant, by the courtesy in these premises. The will gave but a life estate to Catharine Provoost. There was no proof that she was an heir of Colyer, or that she was married to Provoost. Nor that the plaintiffs were the heritable issue of John D. and Catharine Provoost. Nor that there was seizin in fact, or possession in her before her death. (2 *Black.*, 126 ; 1 *Rop.*, 4 ; 4 *Kent.*,.28, 30 ; Doe *a.* Hutton, 3 *Bos. & Pul.*, 643 ; 1 *Rop.*, 9 ; *Perk.*, § 453 ; *Co. Litt.*, 29.)

VI. Whatever estate Provoost had, yielded to and was merged in the greater, the legal estate, held by Bishop the mortgagee, on condition broken. (4 *Kent.*, 45 ; Cooper *a.* Whitney, 3 *Hill*, 95 ; Chesterman *a.* Gardner, 5 *Johns. Ch.*, 29 ; *Story's Eq. Jur.*, 697, § 629 ; Power *a.* Lester, 23 *N. Y.*, 527.) But the conveyance, if it did not operate by way of release or extinguishment, certainly did by way of forfeiture. (*Co. Litt.*, 251, a b, 302, b ; 2 *Inst.*, 309 ; 4 *Kent*, 34, 35 ; Cooper *a.* Whitney, 3 *Hill*, 95 ; Packer *a.* Rochester & Syracuse R. R. Co., 17

*N. Y.*, 283.) No entry by him, after her death, could avail him to create or revive a tenancy. (1 *Rop.*, 9; *Perk.*, § 453; *Co. Litt.*, 29.) The recovery in the foreclosure suit, even if defective as to plaintiffs, defeated the tenancy; and such recovery never having been removed or set aside, no tenancy thereafter existed. (1 *Rop.* 42, *and note; Perk.*, § 475; 3 *Rev. Stat.*, 5 ed., 28, §§ 151, 152; Adair *a*. Lott, 3 *Hill*, 182.)

VII. If the mortgage by Provoost and wife was intended. to pay his debt, then it was a disposition of her inheritance or estate absolutely (on non-payment), subject to no after reckoning or claim of her. (1 *Rop.*, 138; 3 *Brown C. C.*, 213; Neimcewicz *a*. Gahn, 3 *Paige*, 619.)

VIII. Plaintiffs in foreclosure, lose rights by lapse of time. (Anon., 3 *Atk.*, 313; Jenner *a*. Tracy, 3 *P. Wms.*, 287, *note B;* Doe *a*. Jesson, 6 *East.*, 80, *and note*, quoting stat. 21; *Jac.*, 1, ch. 16, § 1; 1 *Rev. L. of* 1813, 185, 186, ch. 183, § 3; Jackson *a*. Schoonmaker, 4 *Johns.*, 390; Beekman *a*. Frost, 18 *Ib.*, 544, 560.)

IX. An adverse possession commenced in 1815 (see Clapp *a*. Bromagham, 9 *Cow.*, 530), and ripened into a right of possession in twenty years; and ten years thereafter (allowed for the disability of infancy), tolled the right of entry of the plaintiffs. (1 *Rev. L. of* 1813, 185, 186; 4 *Johns.*, 390; 3 *Cruise's Dig.*, 368, tit. 29, ch. 1, § 3; Taylor *a*. Horde, 1 *Burr.*, 119; 2 *Salk.*, 421; *Ld. Raym.*, 741; Smith *a*. Burtis, 9 *Johns.*, 174; Smith *a*. Lorillard, 10 *Ib.*, 339, 356, per KENT, C. J.; Jackson *a*. Ellis, 13 *Ib.*, 118; Jackson *a*. Wheat, 18 *Ib.*, 40.) The statute bar applies as well to actions in equity as at law. (Humbert *a*. Trinity Church, 24 *Wend.*, 587, 607.)

X. The right to redeem is maintained upon the disability of marriage existing, not in 1815, but in 1841. This would be tacking a disability upon a disability, in violation of the statute. When the statute has commenced to run against the ancestor or other person, under whom the plaintiffs claim, it continues to run notwithstanding any disability that may accrue. (Demarest *a*. Wynkoop, 3 *Johns. Ch.*, 129, 138; Fleming *a*. Griswold, 3 *Hill*, 85.) The statute begins to run when possession is taken from the mortgagor, which, in this case, was in 1815. (Jackson *a*. Wheat, 18 *Johns.*, 40; Demarest *a*. Wynkoop, 3 *Johns. Ch.*, 129, 138; Doe *a*. Jesson, 6 *East.*, 80;

Jackson a. Johnson, 5 *Cow.*, 74; Cholmondeley a. Clinton, 4 *Bligh, O. S.*, 1. Tenancy of Provoost existed at best only as to the surplus which was paid into court, which the heirs could not be delayed in securing, except the interest on such surplus for life. (Cunningham a. Knight, 1 *Barb.*, 399; Jackson a. De Witt, 6 *Cow.*, 316; 3 *Rev. Stat.*, 5 ed., 33, §§ 6, 24; *Ib.*, 43, § 20; Blydenburgh a. Northrup and others, 13 *How. Pr.*, 289, 295.) Provoost will be regarded in equity as guardian for plaintiffs, and liable to account as such for the surplus. (Van Epps a. Van Deusen, 4 *Paige*, 64.)

XI. The assumption that $227 is due on the mortgage is against the allegations in the complaint, as well as the evidence, makes the defendant a trustee of the legal estate for the benefit of the plaintiffs, which, by our law in the case of a paid mortgage, he cannot be deemed. (Jackson a. Crafts, 18 *Johns.*, 110, 114.) The parties seeking redemption must redeem both pieces of land. (1 *Story's Eq. Jur.*, 365; 2 *Ves., Jr.*, 376; 2 *Fonb. Eq.*, b. 2, ch. 3, § 9, *n.*) If the plaintiffs are permitted to redeem, the sum of $750.00, with interest, must be paid. (2 *Fonb. Eq.*, b. 3, ch. 1, § 13; Adams a. Brown, 7 *Cush.*, 220; *Adams' Eq.*, 9 ed., 315; Balch a. Onion, 4 *Cush.*, 559; Parkist a. Alexander, 1 *Johns. Ch.*, 394; 3 *P. Wms.*, 131, *n.*; 1 *Story's Eq. Jur.*, 469, § 439.)

XII. Ackley and the subsequent grantees, *bona-fide* purchasers, cannot be defeated by the unrecorded deed. (4 *Kent's Com.*, 93; Dickerson a. Tillinghast, 4 *Paige*, 215; *Story's Eq. Jur.*, 440, 699, §§ 411, 631.)

XIII. The decree is founded upon proof of disabilities and other matters not charged in the complaint. (Kelsey a. Western, 2 *N. Y.* (2 *Comst.*), 500.)

*John Townshend*, for the respondents.—I. The decree below is too favorable to the appellant; it ought to have declared the mortgage satisfied by the sale in 1815, and that all the plaintiffs were entitled to recover possession of the premises, as in ejectment, and without payment for improvements.

II. The cause of action did not arise until the death of John D. Provoost, in 1841. The question is not whether a remainder-man may redeem, but whether he must redeem, pending a life estate. Pending the life estate, there could be no adverse

holding, as to those in remainder. There can be no cause to redeem (cause of action) until the right is expressly or impliedly disavowed. A redemption by those in remainder would have enured entirely to the benefit of the tenant for life.

III. The exceptions to the witnesses, Catharine Fogal and Colloon Randall, were too broad. (Brown *a.* Richardson, 20 *N. Y.*, 472.) Besides, it seems as if the witnesses might have been examined generally. (Marsh *a.* Potter, 30 *Barb.*, 506; Babbott *a.* Thomas, 31 *Ib.*, 277; Shoemaker *a.* McKee, 19 *How. Pr.*, 86; Barton *a.* Gledhill, 12 *Abbott's Pr.*, 246.) The case of Hasbrouck *a.* Vandervoort (9 *N. Y.* (5 *Seld.*), 153), does not apply.

IV. The unrecorded deed of 1805 was properly admitted, as an ancient deed. (Troup *a.* Hurlbut, 10 *Barb.*, 354; Staring *a.* Bowen, 6 *Ib.*, 109; Clark *a.* Owens, 18 *N. Y.*, 434.)

V. Most of the exceptions arising on questions to the witnesses are rendered immaterial by the decree being adverse to the plaintiffs, Provoost, Tyte, and Day. (Walker *a.* Dunspaugh, 20 *N. Y.*, 170.)

VI. The facts found at special term will be received as the facts in the case, and are not the subject of exception and review thereupon.

BOSWORTH, Ch., J.—The deed of May 10th, 1807, was admitted in evidence without any proof beyond the production of the paper. There was no other evidence of its prior existence; none as to its custody, or where it came from when produced at the trial; and of course no evidence that the plaintiffs, or either of them, ever had possession of the premises in question under it. This decision is clearly erroneous. (Wilson *a.* Betts, 4 *Den.*, 201; Clark *a.* Owens, 18 *N. Y.*, 434.)

The questions, "When did plaintiffs' right of action accrue?" and, "When did the Statute of Limitations begin to run?" are not free from difficulty.

When Catharine and John Fogal were married is not stated in the findings of facts, nor is it stated in them when Sophia and Colloon Randall were married.

The findings of facts do not state that Ezekiel Bishop claimed to own in fee, although they state that he conveyed in fee to John Ackley, on the 25th of November, 1815 (having bought

the premises on the 4th of September, 1815): they do not state that Ackley was even in the actual possession of the lot.

They state that Ackley and wife conveyed in fee, on the 8th of November, 1822, to William Nelson, " who held same during his life in fee; and after his death, his heirs or devisees held said lot, claiming said lot in fee, until the 22d of January, 1850."

Whether the plaintiffs, Catharine and Sophia, were, or whether either of them was, married prior to November 8th, 1822, the date of the conveyance to Nelson, does not affirmatively appear; nor do I deem it important to ascertain.

The foreclosure and sale in chancery did not affect their title as heirs of their mother. She had died before that suit was brought, and they were not parties to it.

If the mortgage was satisfied by the sale in chancery, so that their estate ceased to be incumbered by the mortgage, the Statute of Limitations, as against an action of ejectment, would not begin to run until the death of the tenant by the curtesy. If the mortgage is to be treated as satisfied, then legal title is clear—and the statute is no bar, they being, at the time of the death of the tenant by the curtesy, under the disability of coverture, and that liability being still continuing. (Jackson *a.* Johnson, 5 *Cow.*, 74, 94, 102; The Same *a.* Schoonmaker, 4 *Johns.*, 390; Casborne *a.* Scarfe, 1 *Atk.*, 605.)

They had no right of entry nor any right of possession during the existence of the estate by the curtesy; and during the continuance of that estate, their right as heirs of their mother could not be defeated by a claim of adverse possession, commencing while that estate existed, and after the death of their mother, and not founded on title derived from her. Jackson *a.* Johnson (*supra*) is directly in point.

Whether an action to redeem is barred, though an action of ejectment may not be, I am not disposed to decide at present.

If, as between the plaintiffs and defendants now claiming to own the lot, the mortgage is to be deemed in equity a subsisting incumbrance, and he is to be deemed in equity an assignee of it, there are many reasons why the right to redeem should not be regarded as barred.

A doctrine or rule which requires them to redeem, would impose on them the burden of paying off the mortgage for the benefit of the tenant by the curtesy; while his estate, as such

tenant, in connection with the other mortgaged property, might be worth more than the amount of the incumbrance. It would impose this burden without conferring on them a right to the estate by the curtesy, or any interest in it. Though they should pay the mortgage debt, still they would have no right of entry or possession until that estate terminated.

And they would be compelled to do this merely to preserve their legal right to bring ejectment after the life estate had ceased.

In 2 Atk., 333 (*Anon.*), a redemption was allowed, and what was said in regard to the excuse of there being a tenant by the curtesy, was not involved in the judgment, and is purely *obiter*.

Raffety *a.* King (1 *Keen*, 602), which reviews all the prior decisions, strongly supports the decision of the judge at special term.

Instead of feeling at liberty to overrule his decision on this point, I prefer to not commit myself upon it, and not to pass upon the question, and to leave it open for further argument and consideration upon a retrial of the action.

That the right to bring ejectment is not barred, if such an action will lie, all agree.

What interest either plaintiff has on the lot, upon the evidence before us, if it be not lost by lapse of time, it is useless to discuss. The case made on a new trial, may be entirely different in this regard.

I concur in granting a new trial on the ground first stated, and place my concurrence on that sole ground.

MONELL, J., concurred.

BARBOUR, J.—Nothing can be clearer to my mind than that this action cannot be sustained as a suit in equity, to redeem the land in question from the operation of the mortgage executed by Provoost and wife in 1809. The defendant is neither a mortgagee in possession, nor is that mortgage a lien upon the premises; nor has he even stood in the place of the mortgagee, except in regard to the life estate of John D. Provoost, which has terminated. At the time of the institution of the foreclosure suit, in 1815, Bishop, the mortgagee, had an equitable lien upon the land by his mortgage, to the extent of the life

estate therein of John D. Provoost, as tenant by the curtesy in possession, and also of the estate in fee belonging to Catharine Provoost at the date of the execution of the mortgage, if she was then, in fact, vested with such fee; and might, by foreclosure and sale, have reached either or both of those estates. If he had brought his suit against the heirs at law of Catharine, his decree would have covered the fee, subject to the life estate in case he proceeded against the husband alone. He was entitled to a decree for the sale of the life estate only. For some reason, perhaps because he was advised that Catharine's interest on the premises was merely an estate for life, and had terminated at her decease, in 1810,—or possibly under the belief that the sale of the estate of John D. Provoost would be sufficient, together with the other lot, to satisfy his heirs,—the mortgagee saw fit to proceed against the latter alone, and to sell his interest as tenant by the curtesy. If he was governed by the last-mentioned estimate, his opinion was justified by the result, for the proceeds of the life estate of Provoost in this lot, and of his fee in the other, were not only sufficient to pay the claims of the mortgagee, but left a considerable balance to be returned to Provoost. By that foreclosure and sale of the life estate, and without selling the estate in fee, the mortgage was fully satisfied and discharged, and the purchaser entered into possession, and, up to the death of John D. Provoost, occupied, with his grantees, the premises,—not as mortgagee, but as the absolute owner of the life estate purchased by him at the foreclosure sale, and nothing more; Catharine's heirs in the mean time remaining the owners of the fee, burdened with the life estate, but discharged of the lien of the mortgage. The purchaser at the foreclosure sale, who in this case was the mortgagee himself, not only by his purchase became seized of the life estate which he bought, but with his grantees, the defendants, became subrogated to all the rights of the mortgagee in that life estate; but only in such life estate. No interest in the estate in fee passed to the purchaser at the foreclosure sale by subrogation or otherwise, for he did not buy that estate, and took none of the rights of the mortgagee therein. In a few words, the defendant stands exactly in the shoes of John D. Provoost, whose interest in the premises, and only that, passed to the purchaser by the foreclosure sale. The fact that the

sheriff executed to such purchaser a deed in fee, is in this regard wholly unimportant. To decide otherwise, and that the grantee in such deed holds adversely to the owner of the fee, would be to establish the principle that any tenant, for a term extending beyond twenty years, may by his own deed, purporting to grant in fee, cut off the rights of the real owners of that title, which would be monstrous. It seems clear, therefore, that the plaintiff cannot sustain this action as a suit to redeem the fee of the premises from the operation of the mortgage, there being no mortgage lien upon such fee; nor any person, since the decease of the tenant for life, entitled, by subrogation or otherwise, to claim redemption-money or to remain in possession during the non-payment of moneys secured by mortgage. The interest by subrogation of the purchaser and his grantees, as well as their rights as owners of the life estate, terminated upon the death of John D. Provoost, and they never had any interest in the fee.

But this is not merely an action in the nature of a suit in equity to redeem the property from the lien of a mortgage: it has a double aspect. If the facts warrant it, the plaintiffs may, under the pleadings, be entitled to a judgment, as in an action of ejectment, for the possession of the land itself, or of an undivided portion of it, without condition of payment on their part. Without pausing to consider, therefore, whether the defendant in this case may avail himself of an error in a judgment awarding to him several thousand dollars as redemption-money, to which he is not entitled,—or the question as to whether the judge had jurisdiction at the special term to render a judgment at all, after a trial before him, without a jury, had shown (as I think it did) that the plaintiffs were not entitled to any relief in equity,—I pass to the examination of the further questions involved in the suit, and presented upon this appeal.

Assuming that the plaintiffs are the owners in fee, as the heirs at law of their mother, there was no possession by Bishop or his grantees, prior to the death of John D. Provoost, adverse to the title of such owners; the estate, by the curtesy, having been carried out of, and being held under and in subordination to, the fee. They were simply tenants, though for Provoost's life, and without payment of rents, of the owners in fee; and as such were liable to them for waste, &c. If, therefore, the plain-

tiffs are such owners in fee, they became entitled to the immediate possession of the premises upon the death of Provoost; and might then, or may at any time within twenty years after, but not before that period, maintain their action in the nature of an action in ejectment for the recovery of such possession.

But to enable the plaintiffs to succeed, it is absolutely necessary for them to show that Catharine Provoost died seized of the premises, or some portion of them in fee. Her father's will, given in evidence, did not establish this, for the devise was in general terms, and contained no words of limitation or inheritance, and therefore passed only a life estate. (Harvey *a.* Olmsted, 1 *N. Y.* (1 *Comst.*), 483.) Besides, even if the devise had carried a fee, the fee of this particular lot would not have vested in Catharine to the exclusion of her sister, by such devise alone, and without a severance by the three sisters of the property given to them respectively, and the setting apart of this parcel to Catharine. It was, therefore, incumbent upon the plaintiffs, in order to entitle them to recover more than the share falling to Catharine as one of the seven heirs at law of her father, to show that, by some act subsequent to the death of her devisor, Catharine's life estate became changed to an estate in fee in the lot in question; and this they attempted to do by the production of the alleged deed of 1805.

This deed states, upon its face, that it is made by Margaret, the widow of Peter Colyer; and Charles Colyer, Jacobus Colyer, Peter Colyer, James Van Cott, Eve Provoost, Margaret Tiebout, and Catharine Provoost (described in the deed to be the children, devisees, and heirs at law of Peter Colyer, deceased), with their respective wives and husbands; and after setting forth the will of Peter Colyer, and reciting the fact that doubts have arisen whether the words contained in the will are sufficient to pass estates in fee to Jacobus, Eve, Margaret, and Catharine, purports to grant and convey to each of the parties to such deed, by all the others, the lands devised to each of them by the will: one of the two lots in Essex-street being designated, and so conveyed to Margaret Tiebout; and the other, being the lot in controversy, to Catharine Provoost. But such deed is not signed, either by Jane Van Cott or Margaret Tiebout, two of the alleged children of Peter Colyer, or their husbands; and purports to be signed only by Margaret Colyer, the widow, and Charles

Colyer, Jacobus Colyer, Peter Colyer, Eve Provoost, and Catharine Provoost, five of the seven heirs at law, with their wives and husbands, although other seals are attached to the instrument opposite blanks. The name of Jane Colyer, too (stated in the body of the deed to be the wife of Jacobus), appears twice among the signatures,—one purporting to have been written by her, and the other attested by a mark or cross; and the three subscribing witnesses simply attest that it was "sealed and delivered in presence of" themselves, without stating whether all the persons, whose signatures are upon the paper, so sealed and delivered it, or only a part of them. Some of the persons, too, whose names appear among the signatures, signed in no other way than as marksmen; and there is no evidence upon the face of the paper that such marks were made by those persons. No evidence, beyond what may be inferred from the production of the papers themselves, was given touching its custody, at any time between the date of its alleged execution and the trial of action; and it does not appear to have been either acknowledged or recorded.

It is fully settled with us, that an instrument purporting to have been executed more than thirty years before it is offered in evidence, is not entitled to be read as an ancient deed upon presentation merely, and without further proof of its authenticity. The bare efflux of time is not sufficient. Proof that the paper offered has for that period been in the custody of the party who, if genuine, would be the proper person to hold it, is essential. Evidence of possession under the deed during the thirty years, or some other corroborative evidence of its authenticity is also necessary. (Jackson *a.* Luquere, 5 *Cow.*, 221; Jackson *a.* Lamb, 7 *Ib.*, 431; Hewlett *a.* Cock, 7 *Wend.*, 371; Wilson *a.* Betts, 4 *Den.*, 201.) In the case last cited, proof that the paper offered had been in the possession of the proper custodian for sixty years was held insufficient, in the absence of further corroborative evidence. And beyond all this, it is essential to the admission of the instrument as evidence, that it be wholly free from any just grounds of suspicion. (1 *Greenl. Ev.*, § 21, *n.* 1.)

At the time this deed was read in evidence, none of these prerequisite facts had been proven. The production of the paper by the plaintiffs does not establish a presumption that it had

been in their custody, or that of their ancestors, from the day of its date, for each of the parties to it, all being grantees, was as well entitled to its possession as was Catharine Provoost; and, for ought that appeared, some one of them had held it until after the day of the trial, notwithstanding they were her grantors. It is true, that after the deed was read in evidence, an attempt was made to prove that Catharine Provoost was in possession of the lot in controversy at some time previous to her death, in 1810; and the judge has found as a fact that John D Provoost, and Catharine his wife, were in the actual possession of the premises before and at the time of the execution by them of their mortgage to Bishop in 1809.

Upon a careful consideration of the evidence embodied in the printed case, I find myself unable to agree with the learned and able judge who tried the cause, in regard to this question of fact. There is no evidence whatever in the case tending to prove possession, to any extent, in Provoost or his wife, aside from what is contained in the testimony of Catharine Fogal; and that, it seems to me, is insufficient to establish such possession. She testifies, after the mists of more than half a century have gathered around her memory, that she played when a child, less than ten years old, not merely on the one lot in question, but upon two lots in Essex-street; being probably the two lots devised by Peter Colyer, with another lot in Eagle-street, to his three daughters, Eve, Margaret, and Catharine. If it may be inferred therefrom that the witness so played there by permission or direction of her mother, it is quite as reasonable to suppose that the mother exercised this right by virtue of her claim to all three of the lots, and her ownership in freehold of one of them, not as yet then set apart to her or severed, as it would be to assume that she had or claimed sole possession of the one in question; for, until partitioned, each of the sisters was equitably entitled to the possession jointly with the other two of either or all of the three parcels. The theory suggested will also apply to the alleged use of the lot stated by the witness to have been granted by her mother (who was incapable of making a grant without joining her husband) to Mrs. Tiebout, and the alleged possession of the latter;—a possession, by the way, thus attempted to be proved simply by the use of the legal term itself, without showing in what manner, or to

what extent it was had; the possession, too, of a vacant lot upon which there was no house, and where, notwithstanding such possession, the children of Mrs. Provoost were sent to play. But be that as it may, I think the testimony of Mrs. Fogal, as well as that of Colloon Randall, was inadmissible under the rule as it stood when such evidence was given. The case of Hasbrouck *a.* Vandervoort (9 *N. Y.* (5 *Seld.*), 153) seems to me to be conclusive upon that point.

Besides this, it is quite apparent that the instrument is incomplete as a deed, and could never have been delivered to any of the parties except for the purpose of being executed by them. The object and design of all the parties appears clearly to have been, not merely to carry into effect the intention of Peter Colyer, as expressed in his will, but to go beyond that, and grant by and on the part of all the heirs at law, a particular lot in severalty to each of the three daughters in fee, in lieu of the life estate which she had by the will, in an uncertain one of three lots; and also to grant and release to each of the other devisees the lands devised to them respectively, as well as to covenant, as they did with each other, that they would severally abide by the will, according to the construction thus given to it, and carry it into effect. The great object of each of the parties to the proposed deed, therefore, was to perfect and quiet the title to the land devised to him; and such grant and release to himself, constituted the consideration for his execution of the deed. This, then, being the motive of the parties, it is more reasonable to suppose that the deed was stopped in transitu by some of them, in its passage for execution, than to believe it was finally delivered to any of the parties as a complete deed before it was executed by all the grantees.

There is still another reason which ought of itself to have precluded the admission of the instrument, even if its execution by all the parties whose signatures appear upon it had been fully proved; that is, it did not prove nor tend to prove any fact stated in the complaint. Certainly, the title claimed by the plaintiffs to have been vested in their ancestors by a deed of a certain description, executed by fifteen persons named in the complaint, and in no other manner, cannot legally be proven by the production of a deed signed by eleven only of those persons. I am of opinion, therefore, that the deed was improperly

permitted to be read, and that there is no evidence in the case tending to establish the fact that Catharine Provoost was ever seized or possessed of a fee in the premises, except as one of the seven heirs at law of her father.

Considering, however, for a moment, that all of the persons named in the deed of 1805 as parties to it were heirs of Peter Colyer, and his only heirs at law; that the deed was duly delivered to Catharine Provoost by those persons whose signatures appear upon it, and that it was properly received in evidence;—still the judgment cannot be sustained, even upon the theory of the judge himself. For, in that case, the two heirs at law who failed to sign the deed are the owners of two-sevenths of the premises. So, too, as to Eve Colyer, a married woman, who signed the deed, but failed to acknowledge it in the manner required by the statute then in force, so as to render it effective. (1 *Webst. L. N. Y.*, 478.) Nothing passed by her deed, and she remains the owner of another seventh. Surely, then, the plaintiffs, who have obtained the judgment, are not entitled to the possession of that portion of the premises which is represented by those three-sevenths, even though it may clearly appear that the defendant has no right whatever to such possession. They must rest upon the strength of their own title, and cannot avail themselves of the weakness of that of their adversary.

I think, too; that the learned judge erred in dismissing the complaint as to a part of the plaintiffs, upon the ground that they were barred by the Statue of Limitations. The action was brought within twenty years after the death of the tenant for life, when the right of the plaintiffs to the possession accrued.

For these reasons, I am of opinion that the judgment cannot be sustained upon any supposable theory, and that it should therefore be reversed with costs, and a new trial granted.

As both the Chief-justice and Justice Monell deem the admission of the alleged ancient deed a fatal error, justifying a reversal of the judgment, and do not consider it necessary to pass upon the further questions embraced in the foregoing opinion, such opinion is not to be taken as that of the general term. It is filed simply as the conclusion to which I have, individually, arrived, upon an examination of the whole case.

Judgment reversed, and new trial ordered.