(137 App. Div. 86.)

HOPE v. SHEVILL.

(Supreme Court, Appellate Division, Second Department.   March 31, 1910.)

1. MORTGAGES (§ 421*)—FORECLOSURE—JURISDICTION OF PARTIES.

The court in mortgage foreclosure acquires no jurisdiction of a nonresident except by service of process by publication or by his voluntary appearance in person or by attorney.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1253; Dec. Dig. § 421.*]

2. JUDGMENT (§ 585*)—RES JUDICATA.

The denial after hearing of a motion by a defendant in a mortgage foreclosure action to set aside the judgment of foreclosure as against him on the ground that he was a nonresident, not served with process, and that the appearance of an attorney therein for him was unauthorized, is, while unreversed, res judicata and is a bar to an action by him for partition for his interest in the premises.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1092–1094; Dec. Dig. § 585.*]

3. PARTITION (§ 44*)—DEFENSES—LACHES.

A suit to foreclose a mortgage made a nonresident infant heir a defendant. The summons and complaint were served on her in a sister state without order of publication, and no guardian ad litem was appointed for her. The judgment of foreclosure was rendered in 1886. She understood the meaning of the papers, but did not know of any appearance for her until a few months prior to July, 1907. *Held*, that an action by her begun in July, 1907, for partition to recover her interest was not barred by laches, though the doctrine of laches might apply in determining what relief should be granted with reference to improvements placed on the land by a bona fide purchaser.

[Ed. Note.—For other cases, see Partition, Cent. Dig. § 113; Dec. Dig. § 44.*]

4. CURTESY (§ 11*)—BAR—FORECLOSURE OF MORTGAGE—ACTION—EFFECT.

When the mortgagor and her husband are made parties to a suit to foreclose by due service of process, a judgment of foreclosure and the sale pursuant thereto will transfer the fee to the purchaser and extinguish any possible life estate in the husband.

[Ed. Note.—For other cases, see Curtesy, Cent. Dig. § 36; Dec. Dig. § 11.*]

5. MORTGAGES (§ 426*)—FORECLOSURE—PARTIES.

Where husband and wife mortgaged her realty, and the wife died leaving children who became the owners in fee subject to the husband's tenancy by curtesy, every person holding an interest in the land should be served with process in a suit to foreclose the mortgage to transmit his interest in the estate.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1272; Dec. Dig. § 426.*]

6. REMAINDERS (§ 17*)—ACTION BY REMAINDERMAN—ACCRUAL OF RIGHT OF ACTION.

A husband and wife mortgaged her lands, and the wife subsequently died leaving children and the husband. The mortgage was foreclosed, but a nonresident minor child was not properly served with summons and complaint, nor was a guardian ad litem appointed for her. The other children and the husband were properly served. A judgment of foreclosure was rendered and a sale had pursuant thereto. *Held*, that limitations did not begin to run against the nonresident's right to recover her interest in the lands until after the death of the husband.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 16; Dec. Dig. § 17;* Limitation of Actions, Cent. Dig. § 231.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Action by Sarah Emilie Hope against James Benjamin Oric Shevill and others. From a judgment of the Special Term (119 N. Y. Supp. 713) in favor of defendants Charles O. Seaman and others, plaintiff and defendant James Benjamin Oric Shevill appeal. Affirmed as to defendant Shevill, and reversed as to plaintiff, and new trial granted.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Charles G. F. Wahle, for appellants.
John C. Loud, for respondents Seaman.
G. P. Foulk, for respondent Kroos.

THOMAS, J. Hope, plaintiff, Shevill, defendant-appellant, and three others, their brothers, on February 7, 1875, took by descent from their mother a piece of land in Brooklyn, subject to the tenancy by the curtesy of their father, Benjamin Shevill. May 1, 1874, their mother and father mortgaged the land to one Hoople, for $4,000. On June 27, 1885, defendant Hoople, assignee of the mortgage, began foreclosure by action, and judgment was rendered July 14, 1886, whereon sale was made September 15, 1886, to defendant Hoople, who conveyed March 29, 1892, to defendant Seaman, by deed recorded April 1, 1892, who, on April 3, 1893, mortgaged the land to one Kroos, who assigned the mortgage to defendant Kroos. On July 27, 1891, Benjamin Shevill, the husband, died. This action is for partition and an accounting, and was begun in July, 1907. The plaintiff and defendant-appellant claim that, although made parties to the foreclosure action, they were not served with the summons, and that the attorney appeared for them without authority. In this action no evidence of authority to appear is given, but that such authority existed has been established, as will be later noticed. Hope was under age, and lived in New Jersey with her husband. Shevill was of age, and was a nonresident of the state. No service was made on Shevill. Service of the summons and complaint was made on Hope in New Jersey, without order of publication; but no guardian ad litem was appointed. Hope understood the meaning of the papers, but did not know of the appearance for her until within a few months previous to this action. Shevill knew nothing of the foreclosure and sale until about the same date.

The defense as to both Hope and Shevill is the statute of limitations, and laches; and as to Shevill, separately, that he is bound by the appearance of the attorney and barred by an order made in the foreclosure action, entered on September 9, 1907, denying Shevill's motion, dated July 5, 1907, and returnable and heard July 22, 1907, to set aside the judgment on the ground that the summons was not served and Catlin had no power to appear.

The court had no jurisdiction of Shevill, a nonresident, and jurisdiction could not be obtained save by means of service by publication, which was not had, or by his voluntary appearance in person or by attorney.

Without considering the various other matters suggested by counsel, it is considered that the order denying the motion to set aside the judgment is a bar to this action. Shevill did appear in the foreclosure ac-

tion, without limiting his appearance, and moved to set aside the judgment, and his motion was denied. In Vilas v. Plattsburgh & Montreal R. R. Co., 123 N. Y. 440, 25 N. E. 941, 9 L. R. A. 844, 20 Am. St. Rep. 771, Chase, a nonresident, had moved to set aside the judgment against him on the ground that he was never served with process, and that the appearance was unauthorized. The court reversed the judgment of the General Term, which affirmed the order of the Special Term denying the motion, and held that it was proper to seek relief in the action wherein the unauthorized appearance was entered. The opinion states:

"The jurisdiction of a court of equity to set aside a judgment at law obtained by fraud or on other grounds of equitable cognizance has been often asserted and is unquestioned, and it is not necessary now to deny that under special circumstances, where the question of the unauthorized appearance is complicated with fraud, or the rights of purchasers, or the circumstances are such that the court can see that the right to or measure of relief cannot properly be determined on motion having regard to all interests affected, resort may be had to a bill in equity, or now, in this state, to an equitable action. There are several cases in other courts where jurisdiction in equity by original bill to set aside a judgment entered on an unauthorized appearance by attorney has been entertained. But all of them are marked by peculiar and special features, such as those to which we have adverted. Shelton v. Tiffin, 6 How. (U. S.) 163, 12 L. Ed. 387; Harshey v. Blackmarr, 20 Iowa, 161 [89 Am. Dec. 520]; Wiley v. Pratt, 23 Ind. 628. In Critchfield v. Porter, 3 Ohio, 518, the Supreme Court of Ohio dismissed a bill filed for relief against a judgment rendered on an appearance of an attorney without authority, on the express ground that the remedy should be sought by application to the court in which the judgment was rendered. It seems to us that upon considerations, both of principle and policy, relief, except in special cases, should be sought on motion in the action."

The court, in Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388, in the opinion states:

"We think the objection grounded upon the unauthorized appearance of her attorney and the nonservice of any process upon her cannot prevail in this action. It has been settled by an unbroken line of decisions in this state, running many years back, that, unless under some peculiar and extraordinary circumstances, not existing in this case, the objection that a party was not served and an appearance by an attorney in a court of record for such party was unauthorized, and, hence, that the judgment was without jurisdiction, cannot be taken in a collateral proceeding or action, and that the party is confined to a motion in the original action in order to obtain relief."

See, also, O'Connor v. Felix, 87 Hun, 179, 33 N. Y. Supp. 1074.

But the present question is not whether Shevill could have attacked the judgment in a separate action. He did not prefer such course. He considered that he was entitled to relief in the first action, and so moved, and cannot now assert that the adverse order has not the force of an adjudication. Had he succeeded, the opposite party would have been estoped. It was held that such an order was an adjudication in De Biase v. Hartfield, 33 Misc. Rep. 316, 68 N. Y. Supp. 468, and Russell, J., said:

"In the foreclosure action this court had proceeded to judgment of foreclosure and sale upon the faith of a supposed proper service of the summons. It was then called upon by application of the defendant in that action to consider and determine the question of its own jurisdiction, with that defendant then voluntarily coming into the jurisdiction of the court, and did upon such application adjudicate the question of fact presented, and determine the status of that foreclosure action by final order. There is no reason why that de-

termination should be collaterally attacked by any person who was a party to the proceeding in which this court arrived at its decision. The plaintiff in that action would have been bound for all purposes by the decision, and it is of equal force against the other party."

The court at Special Term held that plaintiff could not maintain the action on account of her laches and the statute of limitations. The doctrine of laches does not go to the maintenance of the action, but may have application in determining what equitable relief shall be granted with reference to improvements, if any, placed upon the land by a bona fide purchaser. Plaintiff is not barred by the statute of limitations. Her claim is that the statute did not begin to run until the death of the husband, Benjamin Shevill, who, subject to the mortgage, held a life estate as tenant of the curtesy. In that case the action was begun within 20 years, and was in time. The respondents claim that the statute began to run from the date of sale on foreclosure. This claim is predicated upon the theory that the judgment and sale accelerated the remainder, if the interest of the heirs may be called such, by destroying the life estate. I think that ingenuity cannot sustain this contention. The purpose of an action to foreclose a mortgage is to extinguish liens and transmit through the mortgage to the purchaser on the sale the fee of the land. If, in the present case, the mortgagors, Sarah Shevill and her husband, Benjamin Shevill, had been living, they could have been made parties upon due service, and judgment rendered, and by sale pursuant thereto the fee would have been transferred to the purchaser. Such conveyance through the process of law would have carried the whole fee, and extinguished any possible life estate in the husband, because in such case it would not have vested during the wife's life. But it chanced that the wife, the owner of the fee, had died, and thereby five owners in common of the fee took her place, subject, however, to the tenancy by the curtesy in the husband. What had been an entire fee in one ownership became a fee in five ownerships and a life estate carved therefrom by the law. Hence it was necessary to serve each of the persons holding an estate in the land, and every person made a party and so served would be foreclosed of any right to assert title in the land, because such person's title would have been conveyed to the purchaser. No estate is extinguished, but every estate is transmitted. Now, the estate in the husband is quite as distinctly an estate in the land as is the fee in the heirs. The estate conveyed to the purchaser is the estate in the heirs plus the estate in the husband, which united make the whole fee. Assuming that Shevill's interest was properly conveyed on foreclosure, it follows that four-fifths of the fee and the life estate in the whole fee were conveyed to the purchaser, and as to such four-fifths the life estate merged in the fee. But the fee of one undivided fifth of the land was outstanding, because plaintiff's interest was not transmitted, and the life estate as to her interest continued, although it had been conveyed to the purchaser. The purchaser had no interest in which it could merge. So, after the sale on foreclosure, Hoople owned the fee of four-fifths of the land and the life estate in one-fifth thereof, the fee of which was in plaintiff. This is the plain operation of the law in the transmission of the estate.

It was as impossible to destroy the life estate as it was to destroy the fee in an undivided fifth of the land. Estates are not destroyed nor barred, but the right of ownership is extinguished by conveyance. What the mortgagor and those succeeding to his interest had, the purchaser takes after regular foreclosure. In that way he is connected in title with all previous conveyances, and he holds as if all the owners of estates in the land, brought into the action, had executed conveyances to him. Section 1632, Code Civ. Proc.; Fogal v. Pirro, 17 Abb. Prac. 113; Green v. Mussey, 76 App. Div. 174, 78 N. Y. Supp. 434; Marshall v. United States Trust Co., 93 App. Div. 252, 261, 262, 87 N. Y. Supp. 747; Noonan v. Brennemann, 54 N. Y. Super. Ct. 337, 345; Georgia Pacific R. R. Co. v. Walker, 61 Miss. 481. It follows from this that the statute of limitations against plaintiff did not begin to run until the death of Benjamin Shevill, the life tenant, in 1891. Jefferson v. Bangs, 197 N. Y. 35, 90 N. E. 109; Jackson v. Johnson, 5 Cow. 74, 95, 96, 15 Am. Dec. 433; Jackson v. Harsen, 7 Cow. 323, 327, 17 Am. Dec. 517; Jackson v. Schoonmaker, 4 Johns. 390; Manolt v. Petrie, 65 How. Prac. 206, 209; Fogal v. Pirro, 17 Abb. Prac. 113; Randall v. Raab, 2 Abb. Prac. 307, 313; Bennett v. Garlock, 10 Hun, 328, 341; Gindrat v. Western Railway of Alabama, 96 Ala. 162, 11 South. 372, 19 L. R. A. 839.

It is urged that Hoople became mortgagee in possession. He had the title to four-fifths of the land. Plaintiff owned the other undivided fifth, subject to the life estate which Hoople held. If he was a mortgagee in possession, was he claiming as such to be in possession of the whole fee, or only that which the plaintiff owned? The plain fact is that he did not enter as mortgagee; he did not claim to be a mortgagee in possession of any part of the land; he did not claim it adversely against plaintiff, as he must have done in order to bar her. Becker v. McCrea, 193 N. Y. 423, 86 N. E. 463.

The judgment should be affirmed as to defendant-appellant Shevill, and reversed as to the plaintiff, and a new trial granted, with costs of the appeal to the plaintiff and costs below to abide the final award of costs. All concur.